## In re Anonymous No. 49 D.B. 77

Disciplinary Board Docket no. 49 D.B. 77.

McDONNELL, *Member*, June, 28, 1979—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), The Disciplinary Board of the Supreme Court of Pennsylvania (board), herewith submits its findings and recommendation to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

On October 25, 1977, the Supreme Court entered an order referring this matter to the Disciplinary Board as a result of respondent's conviction on two counts of violating the Internal Revenue Code in that he filed a false income tax statement and willfully evaded the payment of income taxes for the year 1970. On February 3, 1978, the office of disciplinary counsel filed a petition for discipline in two counts charging respondent with having violated the Code of Professional Responsibility. Charge I was his conviction of two counts of violating two sections of the Internal Revenue Code. Charge II alleged that respondent falsely testified under oath to agents of the Internal Revenue Service during a question and answer session concerning his 1970 income tax filing. Petitioner charged that respondent violated D.R. 1-102(A)(3) which prohibits illegal conduct involving moral turpitude; D.R. 1-102(A)(4) which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation; D.R. 1-102(A)(6) which prohibits conduct that adversely reflects on fitness to practice law.

Respondent did not file any formal answer to the petition but did file an informal letter dated May 7, 1978. The Disciplinary Board assigned the case to the hearing committee who held hearings on April 5, 1978 and May 2, 1978. As a result of these hearings the hearing committee concluded that respondent had violated the aforementioned rules of the Code of Professional Responsibility both as to Charge I and Charge II.

The committee's recommendation was that respondent be suspended from the practice of law for one year. Thereafter, respondent filed exceptions to

the hearing committee's report and requested oral argument. No exceptions were filed by petitioner. Oral argument was set for March 9, 1979 and prior to argument, respondent withdrew his exceptions. The panel, assigned to hear the oral argument, decided to allow petitioner to set forth its position and respondent also put forward his position.

## II. DISCUSSION

Respondent is 44 years of age, married and the father of three children. He was admitted to practice before the Supreme Court in 1961 and has practiced as a trial lawyer since that time. He has never been charged with any other violation of the Code of Professional Responsibility nor has he ever been convicted of any crime before. As a result of his conviction on two counts of violating the Internal Revenue Code he was put on probation for a total of three years and fined $7,000.

There is no question that respondent was convicted on two counts of violating the Internal Revenue Code, however, respondent seriously questioned whether Charge II was properly brought in this proceeding. That charge pertained to a question and answer session that respondent participated in under oath with the Internal Revenue Service during the investigation of his 1970 income tax obligations. The committee found that this was properly brought by the office of disciplinary counsel and that it was a proper matter for the committee to consider. The committee found that during the course of that question and answer session respondent was not truthful concerning the source of the moneys which he used to obtain a certificate of deposit for the sum of $35,000. The committee concluded that he had testified falsely in the answer to

the question concerning the certificate of deposit. Having found that Charge I and Charge II were substantiated by the evidence, the committee concluded that respondent should be suspended from the practice of law for twelve months. The committee further pointed out that respondent had not practiced law since about September of 1977 and that he had undergone emotional strain and was seeing a psychiatrist. The committee also found as a result of respondent's testimony that he was contrite for the wrong that he had done.

It is apparent from the entire report of the hearing committee that the result recommended was arrived at after conscientious evaluation of all of the evidence. The committee's recommendation appears to the board to be appropriate under all the circumstances.

## III. RECOMMENDATION

The board recommends that respondent, [   ], be suspended from the practice of law for a period of one year.

Messrs. Henry and Reath dissent and would recommend a two year suspension. Mr. Harrington did not participate in the adjudication.

## DISSENTING REPORT

REATH, *Member*, June 28, 1979—I respectfully dissent.

At the same meeting of our board when we decided the instant case, we also submitted a recommendation to your honorable court in the case of [Anonymous], 60 D.B. 75, where we recommended five years' suspension for a lawyer who received

stolen goods to the approximate value of $10,000[1] He was subsequently sentenced to a five-year suspended sentence with probation, and ordered to pay $3,000 costs and restitution in the amount of $9,243.68. This was the lawyer's first offense— with an otherwise unblemished record.

In light of this, I fail to see why we should treat any differently respondent in this case, who willfully defrauded the people of the United States of some $9,000 by filing a false and fraudulent personal income tax return for the calendar year 1970 in violation of the Act of August 16, 1954, 68A Stat. 851, 26 U.S.C.A. §7201.[2] He understated his true taxable income of $42,545.86 for that year to be $18,466.83.

---

1. Respondent in that case took the stand in his own defense, contending that he had agreed as an accommodation to a friend, to permit some furniture to be stored in respondent's basement.

The trial judge, sitting without a jury, characterized the testimony as "sometimes conflicting, confusing, complex and unbelievable. Yet in the end, it was clear that the defendant was guilty of a crime."

Characterizing the prosecutor's chief witness as "sometime incredible, yet one wonders, considering (respondent's) prior knowledge of this man, why he would be engaged in any kind of enterprise with him. So one must conclude that (respondent) knew the goods were stolen, or at the least believed they had been stolen and that he was intentionally receiving or retaining them in his house."

2. There are three principal crimes in connection with federal income taxes: (1) willful evasion (26 §7201); (2) willful failure to collect or pay over tax (26 §7202); and (3) willful failure to file return (26 §7203).

Violation of either sections 7201 or 7202 is a *felony* punishable by fine of not more than $10,000 or imprisonment for not more than five years or both, while violation of section 7203 is a

Additionally, he was found to have lied under oath to agents of the Internal Revenue Service at a question and answer session in October 1971, regarding the sale of a $35,000 certificate of deposit. Respondent claimed that this certificate was a gift. In fact, he had purchased it just one day after he received a referral fee of $34,400, which was the largest fee he had ever received—and one "which he will never forget."

For the reasons developed below, and based on sound historical precedent of this court, I respectfully submit that a suspension of twelve months is totally inadequate for such a serious offense—and that proper discipline under all the circumstances of this case should be at least two years' suspension.

There is no need to dwell at any length on a discussion of the purposes of imposing discipline in cases such as this, where there is such a wealth of authority available. Stated simply, imposing sanctions in disciplinary cases serves the function of protecting the courts, the profession, and the public, from attorneys who have shown themselves unworthy of the right to practice. See: In re Leopold, 469 Pa. 384, 366 A. 2d 227 (1976); In re Berlant, 458 Pa. 439, 328 A. 2d 471 (1974), cert. denied, 42 U.S. 964; Alker Disbarment Case, 398 Pa. 188, 157 A. 2d 749 (1960).

Likewise, little need be said about the seriousness of being convicted of willful evasion of income tax, a crime designated as a felony[3] by Federal stat-

---

*misdemeanor* punishable by a fine of not more than $1,000 or imprisonment for not more than one year or both.

3. ". . . the infamy is that of a felony, which, says Maitland, is '. . . as bad a word as you can give to man or thing.' 2 Pollock and Maitland, History of English Law, 465." Morissette v. United States, 342 U.S. 246, 260 (1952).

ute and which has been held by your honorable court to be one involving moral turpitude: Alker, supra.

I believe that a majority of the board would have voted for a more serious form of discipline in this case, had they not felt that a precedent had been set by the Disciplinary Board and your honorable court that had affirmed or reduced the recommendation for sanction by the Disciplinary Board in similar cases. See: In re [Anonymous], 23 D.B. 73, affirmed by order of the Supreme Court dated July 16, 1974, 354 Misc. Dkt. 19, and In re [Anonymous], 42 D.B. 74, affirmed by order of the Supreme Court dated October 28, 1975, 477 Misc. Dkt. 19, where nine months' suspensions were recommended by the Disciplinary Board and affirmed by your honorable court.

On reflection, I believe that both these cases were wrongly decided and set a precedent that your honorable court should now repudiate as clearly not in harmony with numerous decisions from other jurisdictions that generally impose a higher level of sanctions for such egregious conduct as that engaged in by respondent in the instant case. Failure by the court to recognize the seriousness of a charge such as in the instant case will inevitably undermine public confidence in the integrity of the legal profession, and raise serious questions regarding the ability of the profession, aided by the court, to police itself in the public interest.

A lawyer holds a unique and trusted role in our society in the administration of justice and in advising and counseling clients regarding their legal rights under law. He or she, above all others, should by precept and example show great reverence and

respect for law, and abjure any form of false swearing or conduct that puts in jeopardy the self-enforcement of our laws by law-abiding people.[4] Over 17 years ago, Mr. Justice Cohen spoke eloquently to this subject, where, in his concurring opinion in the Brodstein income tax evasion case, 408 Pa. 84, 86, 182 A. 2d 181 (1962), he stated:

"Since the founding days of this nation, the lawyer has played an important part in our democratic process. It was through the lawyer and his intimate relationship with government that our country developed the unique institutions that now characterize our American society. The large number of lawyers who have been presidents, governors, congressmen and legislators, not to speak of

---

4. See opinion of Judge Digges, in the Agnew (former Vice-President of the United States) Disbarment Case, where, in entering a unanimous order of disbarment, the Supreme Court of Maryland stated:

"The administration of justice under our adversary system largely depends upon the public's ability to rely on the honesty of attorneys who are placed in a position of being called upon to conduct the affairs of others both in and out of court . . . This crime, which involves moral turpitude, and is infested with fraud, deceit, and dishonesty, clearly comes within that category we have previously discussed that will result in automatic disbarment. . . . For this conclusion, we rely in part on the concept that 'our method of filing income tax returns is fundamentally based upon the honor of the individual reporting his income. . . .' articulated by Judge Hoffman at the time he sentenced the respondent, and in part upon our conclusion that willful tax evasion by a lawyer, . . . cheats and defrauds the government which, in our mind, is tantamount to defrauding his client or any other person." Maryland State Bar Asso. v. Agnew, 271 Md. 543, 549-51, 318 A. 2d 811, 814, 815 (1974).

those who served in countless other public positions, have closely identified the lawyer with our democratic government and our democratic institutions.

"The relationship of the lawyer to his government should provide an exemplary standard for the relationship of the general public to its government. Actions that breach the solemn trust that the lawyer owes to his government do great damage to our democracy. They should not be glossed over, justified or excused . . ."

There is strong precedent by this court in cases prior to [Anonymous] and [Anonymous], supporting disbarment as an appropriate sanction for such serious conduct as income tax evasion that involves moral turpitude. In addition to the Alker case (disbarment ordered for willful evasion of income tax), see Brodstein Disbarment Case, supra, which affirmed a decision of the Court of Common Pleas of Berks County, which had ordered the disbarment of the former President of the Berks County Bar Association, who had been convicted on three counts of evading payment of income taxes upon his plea of nolo contendere. In that case, the attorney had previously been suspended for three years.

In the Brodstein case, which, because of the prior suspension, is admittedly somewhat more serious than the instant case, your honorable court affirmed the decision by a divided 3:3 vote. However, Justices Jones and Eagen dissented in favor of a five-year suspension. Therefore, of the six justices who considered the question, three felt respondent should be disbarred, two would have ordered a

five-year suspension, and one (Mr. Justice Musmanno) would have ordered a lesser period of suspension or other discipline.

The first case that broke precedent with the prior practice of disbarment for willful evasion was in the matter of [Anonymous], 23 D.B. 73, affirmed by order of the Supreme Court dated July 16, 1974. It is believed that this was the first tax evasion case to come before the newly created Disciplinary Board. In [Anonymous], and unlike the Brodstein case, respondent had an exemplary record, plus substantial evidence of special extenuating circumstances.

In [Anonymous], the nine months precedent became further cemented, although in that case, respondent, who entered a nolo contendere plea bargain of guilty for two years of income tax evasion, had been previously suspended for three years.

On the other hand, the justices of our neighboring state of New Jersey, in two recent cases, while recognizing the precedent for disbarment in that state for willful evasion in filing false returns, have, because of age, an otherwise unblemished record, or other special circumstances, unanimously recommended two-year suspensions. See In re Becker, 69 N.J. 120 (1976); In re Tuman, 74 N.J. 143 (1977).[5]

5. For example, in other jurisdictions of discipline for the lesser offense of willful failure to file income tax returns, see In re Dunn, 569 P. 2d 366 (1977) (suspension for an indefinite period); In re O'Hallaren, 64 Ill. 2d 426 (1976) (eighteen month suspension); In re Washington, 62 Ill. 2d 23 (1975) (two year suspension where the failure to file had continued for four years); State Bar Grievance Admin'r v. Lewis, 392 Mich. 224 (1975) (suspension for 130 days minus forty days' credit).

See, also, recent decision by the Court of Appeals for the State of New York, who recently, in a 4:3 decision held that any attorney convicted of any Federal felony is to be automatically disbarred, regardless of the gravity of the offense, or any mitigating circumstances. See Matter of Thies (receiving stolen securities), N.Y. Court of Appeals (No. 389), reported in the New York Law Journal for Friday, October 20, 1978.

Under the circumstances of this case, I recommend a minimum of a two-year suspension, and would urge your honorable court to announce a prospective rule hereafter that would follow the precedent, as recently adopted by New York State, of automatic disbarment where a respondent has been convicted of a felony, under either Pennsylvania or Federal law.

Mr. Henry joins in the dissent except with respect to the recommendation for a rule of court providing for automatic disbarment where a respondent has been convicted of a felony.


## ORDER

EAGEN, *C.J.*, and now, August 22, 1979, the report and recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated June 28, 1979, is hereby accepted; and it is ordered that [Respondent] of [    ] County, be, and he is forthwith suspended from the practice of law in the Supreme Court and all the courts under its supervisory jurisidction, for a period of one year and until further order of this court.

Mr. Justice Larsen would enter an order of suspension for eighteen months.