To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:
GILBERT, Member,
Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the within petition for discipline.
HISTORY OF PROCEEDINGS
Respondent, born in 1920, was admitted to the practice of law in the Commonwealth of Pennsylvania on November 20, 1967. His current address is [ ]-
Respondent, the administrator of the [A] Pension Fund, was indicted by a grand jury in the United States District Court for the [ ] District of Pennsylvania. (Stip. para. 3, exh. P-1.) Respondent was charged with six counts of violating general conspiracy statutes and 18 U.S.C. §1027 concerning false statements and concealment of facts in relation to documents required by the Employee Retirement Income Security Act of 1974.
On May 17, 1985, the jury found respondent guilty on all counts. (Stip. para. 25, 26; exh. P-1, P-2A through 2H.) By opinion and order dated October 9, 1986, the Honorable [B], Senior Judge, granted respondent’s motion for a new trial on counts II, III, IV based on his finding that he had inadequately instructed the jury on respondent’s good-faith defense. (Stip. para. 27; exh. P-7.) By order dated December 4, 1986, Judge [B], acting on respon *495 dent’s motion for reconsideration, granted a new trial on count I. (Stip. para. 32; exh. P-10 and P-11.)
Respondent’s conviction on counts V and VI remained in which respondent was found guilty of knowingly failing to disclose, in the annual reports of the pension fund for 1982 and 1983, his private interest in properties for which the pension fund provided mortgages.
On December 5, 1986, Judge [B] sentenced respondent to a term of imprisonment for two years on each count to run concurrently. (Stip. para. 29; exh. P-9A and 9B.) At the time of sentencing, Judge [B] suspended the sentence of imprisonment and entered the order in which respondent was placed on probation for five years, serving the first six months under house arrest; respondent was fined $5,000, and made to pay restitution to the fund in the amount of $100,000. (Stip. para. 30; exh. P-9A and 9B.) Judge [B] also ordered that respondent be suspended from the practice of law in the United States District Court for the [ ] District of Pennsylvania. (Stip. para. 31; exh. P-9B.)
By order dated March 6, 1987, the Supreme Court of Pennsylvania immediately suspended respondent and referred respondent’s conviction to the Disciplinary Board pursuant to Rule 214(f), Pa.R.D.E. (Stip. para. 33.)
On May 14, Office of Disciplinary Counsel filed a petition for discipline against respondent charging that respondent’s conviction is grounds for discipline under Rule 203(b)(1), Pa.R.D.E. An answer to the petition for discipline was filed on June 15, 1987, in which respondent, through counsel, admitted violation of D.R. 1-102(A)(4) — conduct involving misrepresentation.
On June 17, 1987, the matter was referred to Hearing Committee [ 1 comprised of [ ]. An evi- *496 dentiary hearing was held on February 28, 1989, at which time the Office of Disciplinary Counsel proceeded by way of stipulation and respondent presented testimony in mitigation.
The hearing committee filed its report on November 3, 1989 in which the committee recommended a three-year suspension retroactive to the date of respondent’s interim suspension. Neither respondent nor the Office of Disciplinary Counsel filed a brief on exceptions.
Thereafter, the matter was referred to board member [ ] for review. The matter was adjudicated by the Disciplinary Board at its scheduled meeting on December 8, 1989.
FINDINGS OF FACT
The board adopts the following findings of fact which led to respondent’s conviction and have been stipulated by counsel:
(1) Respondent served as the administrator of the [A] Pension Fund since he was hired by the trustees in 1963. (Stip. para. 5; exh. P-1.)
(2) In November 1979, respondent and [C] formed a partnership known as [D] which purchased property at [ ] Street in [ ] for the development of nine units. (Stip. para. 8.)
(3) In March 1980, the partnership obtained a two-year $952,500 construction loan from [E] Savings and Loan at a variable rate of two percentage points over the prime rate. (Stip. para. 9.)
(4) Respondent and his partner personally guaranteed the loan. (Stip. para. 10.)
(5) Construction on the nine proposed units began. According to the documentation of [E], by May 4, 1981, the partnership was two months delinquent in interest payments. The interest rate for the delin *497 quent period was 19.25 percent. As of August 1981, the partnership was delinquent in the amount of $27,254.56 for interest due for the months of May, June and July 1981. As of September 28, 1981, the interest rate on the construction loan was 20.125 percent. (Stip. para. 11.)
(6) Respondent was the administrator of the fund on June 12, 1981 when he called a special meeting of the fund’s trustees to discuss the possibility of the fund providing mortgages to buyers of [ ] Street units. (Stip. para. 12.)
(7) The three trustees voted unanimously to permit the use of fund money to finance the [ ] Street mortgages by buyers. (Stip. para. 13.)
(8) The only persons at the June 12, 1981 meeting were three trustees, respondent and [C]. (Stip. para. 14.)
(9) The United States government and respondent do not agree on what was revealed to the trustees at the June 12 meeting by respondent and [C] about their interests in the [ ] Street units and the terms of the mortgages to be provided by the fund. Respondent contended he made full disclosure and the government contended he did not. (Stip. para. 15.)
(10) There are two different sets of minutes concerning the June 12, 1981 meeting. (Stip. para. 16; exh. P-3 and P-4.)
(11) Thereafter, three separate loans totaling $466,000 were approved for the purchase of three of the [ ] Street units as follows:
(a) Units one and three were purchased by [F], a partnership whose partners were [C] and [G], for $148,500 and $155,600, respectively.
(b) Unit nine was purchased by [H], a partnership whose partners were [C] and [I], for $161,900. (Stip. para. 17.)
*498 (12) Respondent had a prior relationship with both [G] and [I]. (Stip. para. 18.)
(13) The loans were for a 30-year term at a fixed rate of 14-percent interest. (Stip. para. 19.)
(14) The sales of units one, three and nine relieved respondent of some of his personal obligations to [E] Savings and Loan for the construction loan. (Stip. para. 20.)
(15) All three loans went into default and civil actions in foreclosures were initiated by the fund. (Stip. para. 21.)
(16) The pension fund has initiated a lawsuit to recover funds it contends are owed to it by respondent. Respondent is defending that action. (Stip. para. 22.)
(17) Federal law (29 U.S.C. §§1021(b)(4) and 1024) requires the filing of an annual report with the Department of Labor by the fund. (Stip. para. 23.)
The following findings of act were found by the hearing committee and adopted by the board:
(18) Respondent, [ ], was born on June 15, 1920 and was 68 years of age at the time of the hearing. (N.T. 58.)
(19) After two years of high school, respondent enlisted in the United States Coast Guard. (N.T. 58.) While in the Guard, he served in the Pacific campaign during World War II. Respondent was involved in the Battle of Midway Island and was wounded in combat. He received an honorable discharge. (N.T. 59-60.)
(20) Respondent became involved with the [A] Union by initially working as a [ ] and then was ultimately appointed in the 1950s to be the steward. (N.T. 62.)
(21) Respondent was subsequently appointed to the position of business agent and served in that capacity in the early 1960s. (N.T. 63.)
*499 (22) Respondent became very active in organizing the [A] Union which was Local [ ] District Council and was instrumental in negotiating a pension plan for the union in the 1960s. (N.T. 64.)
(23) Respondent subsequently was appointed as the paid administrator in the 1960s and remained in that position until his aforementioned criminal conviction which is contained in the stipulation of facts. (N.T. 65.) Respondent resigned that position after his conviction. (N.T. 65, 66.)
(24) During respondent’s administration, the pension plan grew from an idea to a pension fund that had assets of approximately $16 million. (N.T. 66.)
(25) Respondent testified he went to law school because he thought the knowledge would assist him in his responsibilities with the [A] Union. (N.T. 67.)
(26) Respondent attended [ ] Law School and graduated in 1967, and was 46 years of age at the time of his graduation. (N.T. 67.)
(27) Respondent was admitted to practice law in 1968 in Pennsylvania and continued in his own law practice from 1968 until his interim suspension in 1987. (N.T. 69.) He briefly had an association with Attorney [J].
(28) Respondent was a member of the various bar associations including the [ ] Bar Association, [ ] County Bar Association, Pennsylvania Bar Association and the American Bar Association during the years of his practice. (N.T. 69, 70.)
(29) Respondent’s law practice, during the 20 years of his practice, emphasized labor relations. He also had an active practice in the area of criminal law and personal injury law. (N.T. 69.)
(30) Respondent’s law office was located at [ ] which was next to the local Union office for which he was the administrator. (N.T. 70.)
*500 (31) Respondent had been very active in political matters in the City of [ ]. Respondent was the elected [ ] City Councilman from the [ ] District for the years 1968 and 1969 when he filled out a term of a councilman who died in office. (N.T. 67, 68.)
(32) Respondent was active with the Pennsylvania Association for [ ]. He served on the Board of Trustees of that organization for approximately three or four years and was very active during that time period without charge. (N.T. 71.)
(33) Respondent has also been very active in assisting individuals who have problems with alcohol abuse. Respondent himself is not an alcoholic. (N.T. 71.)
(34) Respondent, during the summer, takes children out on his boat and has been doing that for the last six or seven years. The children are referred by a Catholic nun. Further, he organizes outings for children through a friend of his. (N.T. 73, 74.)
(35) Respondent also has spent a great deal of time involved with individuals who have difficulty reading in assisting them in learning to read through tutoring them. (N.T. 74, 75.)
(36) Respondent testified to working with one young man for approximately three years and that individual is now able to read today. (N.T. 74, 75.) He indicated he has helped approximately six other individuals in that regard. (N.T. 76.)
(37) Respondent indicated that during his years of practicing law, he also was involved to some extent in pro bono work particularly in the area of adoptions because another lawyer did a free adoption for him years ago. (N.T. 76.)
(38) Respondent testified he fully complied with the terms of his federal probation. (N.T. 77.)
*501 (39) Respondent indicated that his contracting business is presently his main source of income. (N.T. 79.)
(40) Respondent testified that he accepted the conviction and described how painful the conviction had been, particularly to his personal and professional life, and his deep regret and remorse. (N.T. 85, 86.)
(41) Respondent indicated he would like to be admitted to practice law though he was uncertain whether he would ever actually formally engage in the practice if he was readmitted because of his age. (N.T. 86.)
(42) Respondent presented a number of character witnesses, some of whom testified individually and some of whom testified collectively. The witnesses testified as to respondent’s excellent reputation in the community for honesty, as a law-abiding citizen and a practicing attorney.
CONCLUSIONS OF LAW
The board concurs in the hearing committee’s finding that respondent did not violate D.R. 1-102(A)(3) which prohibits an attorney from engaging in illegal conduct involving moral turpitude.
The board also supports the conclusion of the hearing committee that respondent was guilty of violating the following Disciplinary Rules:
(1) D.R. 1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and
(2) D.R. 1-102(A)(6), which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law.
*502 DISCUSSION
The parties have stipulated to the violation of one Disciplinary Rule of the Code of Professional Responsibility and the underlying facts that support such a violation. Also, respondent’s conviction is grounds for discipline pursuant to Rule 203(b)(1), Pa.R.D.E. Thus, the sole issue before this board is the appropriate measure of discipline to be recommended to the Supreme Court of Pennsylvania. The hearing committee has recommended a three-year suspension retroactive to the date of respondent’s interim suspension to which neither Disciplinary Counsel nor respondent have taken exceptions. Respondent has been convicted of violating 18 U.S.C. §1027, concerning his failure to disclose in the annual reports of the pension fund for 1982 and 1983 his private interest in properties for which the pension fund provided mortgages. At the time of the conviction, respondent was administrator of the fund; a position which inherently involved fiduciary obligations. In fact, respondent was the person who negotiated for the original pension fund in the early 1960’s and was the administrator of the pension fund since its inception. Due to his long-standing dedication to the fund, respondent was implicitly trusted by the trustees of the fund who looked to respondent for guidance and by the laborers who relied on respondent to protect their interest in the pension fund. Respondent, in such a high position of trust, owed a fiduciary duty and was accountable to a high standard of integrity. The Supreme Court of Pennsylvania has emphasized the principles applicable here:
“Few vocations offer as great a spectrum for good and honorable works as does the legal profession. The attorney is entrusted with the life savings and investments of his clients. He becomes the guardian *503 of the mentally deficient, and potential savior for the accused. He is a fiduciary, a confidant, an advisor, and an advocate. However, the great privilege of serving in all of these capacities does not come without the concomitant responsibilities of truth, candor and honesty. In fact, it can be said that the presence of these virtues in members of the bar comprises a large portion of the fulcrum upon which the scales of justice rest. Consequently, an attorney’s character must remain beyond reproach.” In re Leopold, 469 Pa. 384, 366 A.2d 227 (1976) (emphasis supplied), quoting Judge Digges, speaking for the .Court of Appeals in affirming the disbarment of former Vice President Spiro T. Agnew, in Maryland State Bar Association Inc. v. Agnew, 271 Md. 543, 318 A.2d 811 (1974).
Respondent betrayed the trust of the laborers by engaging in self-dealing and placing his personal interest ahead of those for whom he was acting as a fiduciary. Respondent, involved in a failing business venture, used his position of trust to arrange loans through his business partner resulting in personal profit to him in that it relieved him of liabilities. Respondent has demonstrated that he is willing to ignore his fiduciary duties by misreporting information concerning money which belongs to others. Respondent clearly has violated D.R. 1-102(A)(6), which involves engaging in conduct which adversely reflects on his fitness to practice law, and D.R. 1-102(A)(4), for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
Respondent, through counsel, contends that respondent presented substantial mitigating circumstances which should lessen the recommended disciplinary sanction. In the words of. respondent’s counsel, “Respondent’s life is almost that of a storybook from which legends are made.” The *504 board acknowledges respondent’s otherwise good reputation in the community and his numerous charitable, civic, and political activities. The board also recognizes the fact that respondent has complied with all the terms of his probation, which included making restitution in the amount of $100,000. However, these factors did not negate the continuing obligation respondent owed the laborers who entrusted him with their hard-earned pension funds. Respondent had a duty to protect their interests. But instead, he has acted in clear disregard of his duty as a fiduciary and an attorney of the bar. As the Supreme Court of Pennsylvania has pointed out, payment of restitution will not settle or destroy the public’s right to protection against an attorney guilty of unworthy practice in his profession. See In re Leopold, 469 Pa. 384, 366 A.2d 227 (1976).
The primary purposes of the disciplinaiy system are to protect the public from unfit attorneys to maintain the integrity of the legal system, and to preserve the confidence of the public in the legal profession and the judicial system. Office of Disciplinary Counsel v. Stem, 515 Pa. 68, 526 A.2d 1180 (1987).
Respondent’s breach of trust and neglect of his fiduciary duties in order to preserve his own personal interests require severe sanctions in order to protect the public and the integrity of the legal system.
RECOMMENDATION
The Disciplinary Board recommends that respondent, [ ], be suspended from the practice of law for a period of five years, suspension retroactive to December 5, 1986, the date of the sentencing. The board recommends further that respondent be or *505 dered to pay the costs of investigating and prosecuting this matter.
Messrs. Eckell and Gilardi dissent and would recommend a three-year suspension.
Messrs. Padova, Stoelker and Ms. Heh did not participate in the adjudication.
ORDER
Rule to show cause entered by this court on March 15, 1990 is discharged. It is hereby ordered that respondent be and he is suspended from the Bar of this Commonwealth for a period of three years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.
Mr. Justice McDermott did not participate in the consideration or decision of this case.
Mr. Chief Justice Nix and Mr. Justice Flaherty dissent and would impose a suspension of five years.