GEORGE W. PAGE, Receiver, *vs.* WM. PENROSE.

*Compensation of Attorney—Employment by Bank—Services Not of Legal Character—Commissions on Loans Procured.*

A practicing lawyer, employed by a bank while in financial difficulties, to devote his entire time to its affairs, nominally as "special counsel," but in fact rendering services such as would be rendered by a capable and experienced bank official, *held* entitled to compensation at the same rate as if his services had been strictly legal.                          pp. 227, 228

The work required of him not being such as would ordinarily require the services of a lawyer, it must have been contemplated that his employment as a lawyer would cover not only his legal services, but also such executive services as he might be called upon to render in an effort to save the bank from failure.                          p. 228

The only service rendered by him, which could reasonably be regarded as legal, being the collection of certain overdrafts, and that service being such as any bank officer would ordinarily render in the ordinary course of his duties, it fell within the scope of his general employment, and he was not entitled to a special allowance therefor.                          p. 228

·..An..allowance by the chancellor of one·hundred dollars per day,.to an attorney at law, employed by a bank as "special counsel,",. who devoted his entire time for forty-two days to efforts to save the bank from failure, *held* presumably proper, although his efforts were not successful.          pp. 228, 229

An attorney at law *held* entitled to.commissions of only two and one-half per cent. for procuring loans for a bank, which was in difficulties, in view of the security given for the loans, the terms for which they were·made, and the compensation previously paid him for like services.          pp. 229-231

*Decided January 15th, 1925.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Petition and claim by William Penrose against the undistributed assets of the Lafayette Bank in the hands of George W. Page as receiver of the bank. From a decree in favor of petitioner, the receiver appeals. Reversed.

The cause was submitted to PATTISON, URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Samuel J. Fisher,* for the appellant.

*Edwin T. Dickerson* and *Lindsay C. Spencer,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

William Penrose is a practicing lawyer of Baltimore City. In the course of his practice, extending over a number of years, he had considerable experience in the operation and management of banks and other financial institutions, and knows and is known to a number of persons connected with such institutions in Baltimore City.

On October 14th, 1921, the Lafayette Bank of Baltimore, for reasons which need not be discussed here,.had fallen into serious financial difficulties, which threatened disaster un-

less speedily remedied. In that extremity it employed Mr. Penrose as "special counsel" to the bank, and authorized him to borrow from time to time on its behalf such sums "as may be needed." He entered upon that employment, and between the 14th of October, 1920, and November 28th of the same year, when a receiver for the bank was appointed, he rendered services to the bank for which this Court, in *Penrose v. Page,* 145 Md. 1, said he was entitled to be compensated. The lower court, in the decree from which this appeal is taken, fixed his compensation at $10,400, and the question before us is whether that allowance is reasonable and proper. That question is embarrassed by the nature of the services. Regarded as a whole, technically speaking they cannot be regarded as legal, although some of them may have been legal or *quasi* legal in their nature, nor can they be regarded as the services of a loan broker, although some of them partook of that character, too, nor can they be said to be the ordinary services of a financial expert, although the element of experience in dealing with financial matters also entered into some of them. Mr. Penrose was employed as a lawyer, and it is possible that his training and experience as a lawyer may have rendered his assistance more valuable to the bank, but it is difficult to point out any services rendered by him which could not have been rendered in ordinary course by a capable and experienced bank executive familiar with the needs, operation and management of banks. Indeed, there is great force in this suggestion of the learned and careful judge who heard this case in the lower court. In speaking of the difficulty of separating the services into more or less conjectural elements and valuing each element, he said: "This method of computation does not seem to me to be as satisfactory as to consider his services as those of an executive officer called in temporarily to do the administrative work of the president and board of directors, inasmuch as all of the services rendered by him would be rendered under ordinary circumstances by the executive officers of the company without compensation other than their salaries. The object of em-

ploying him was to maintain the bank as a going concern, in doing which the president and board of directors had failed." But the appellee was employed in the special capacity of a lawyer, for he was employed as "special counsel." The bank, therefore, employed a practicing lawyer to give up his practice for forty-two days and devote his entire time to its affairs, and while his services may not, and so far as we can see were not, of a strictly legal character, nevertheless, it is just that he should have been compensated for the services he gave at the same rate as he would have been had they been strictly legal in character. At the same time, because of the nature of the work he was to do and because it was not such work as ordinarily required the services of a lawyer, it must have been contemplated both by him and the bank that his employment as a lawyer covered not only such legal services as might be required, but also such services as a bank executive might be required and expected to give, and that the compensation for his services as a lawyer would also cover such executive services as he might be called upon to render in an effort to save the bank from failure. In fixing the compensation the lower court divided the services into three classes—brokerage, legal and executive. The only service which could reasonably be regarded as legal was the collection of some overdrafts, but as that service was such as would ordinarily be rendered by any bank officer in the ordinary course of his duties, in our opinion it fell within the scope of his general employment, and no allowance should have been made for it.

In the decree appealed from the appellee was allowed one hundred dollars a day for his services under his general employment as "special counsel." We are not prepared for several reasons to say that allowance was excessive. First, because the chancellor was familiar with the compensation for professional services allowed to lawyers practicing in his court, and in the absence of definite evidence to the contrary weight should be given his opinion; second, because it was supported by the testimony of the only witnesses who testified

on the subject; and third, because the services, even though unproductive, were substantial, arduous and between the dates referred to above occupied all the appellee's time.

We cannot agree, however, with the value placed upon the appellee's services as a loan broker. He secured on behalf of the Lafayette Bank loans from different banks aggregating $149,000. That the appellee was entitled to compensation for those services in addition to the allowance made him for executive services was decided in *Penrose v. Page, supra,* and the only question open is what that compensation should be.

The loans appear to have been for short terms, and to have been amply secured by collateral, and there is no apparent reason why with the same collateral they could not have been readily secured by any banker from any institution having the money to lend. There is some testimony, vague and unsatisfactory in quality, that Mr. Penrose guaranteed some of these loans, but even if he did, the risk he assumed was negligible because the loans were amply covered by collateral security. That he did render services in securing these loans for which he should be paid is undeniable, but in valuing those services regard must be had to the circumstances to which we have referred. The impression sought to be conveyed by the appellee's testimony, that the loans were secured largely through the personal appeal of Mr. Penrose, and because of his standing and responsibility, is not borne out by the facts. One loan of fifty-two thousand dollars, part of the aggregate of $149,000, for instance, was secured by collateral aggregating approximately $130,000, and when the lender called the loan, Mr. George W. Page, then the receiver of the bank, immediately arranged to borrow $50,000 on the same collateral and with no other security from the Union Trust Company. Considering that transaction, we cannot believe that the loan of $52,000 could not have been secured in Baltimore on that collateral without the personal undertaking of Mr. Penrose to secure its payment.

Three witnesses testified to what in their opinion was a reasonable charge for the services rendered by Mr. Penrose

in obtaining these loans. Two of them were members of the Baltimore Bar, of standing and experience, and one the vice-president of the National Bank of Baltimore. These witnesses valued the services at five per cent. of the amount borrowed. The witness himself had once before been allowed four per cent. for obtaining a loan of $40,000 secured by the assignment of a $65,000 mortgage. The appellant argues that the appellee only received one per cent. for his services in that transaction, because twelve hundred dollars of the sixteen hundred dollars was paid by him as a bonus to some one connected with the lender. But we do not think that is fair reasoning. The bank paid Mr. Penrose four per cent. commission for the loan, and it had no more to do with the use he made of that commission than an owner who had agreed to pay $40,000 for the erection of a building would have to do with the use to which the contractor put the money paid to him under the contract.

The appellee himself expressed no opinion as to the value of his services, but said that in the opinion of bankers whom he had consulted two and one-half per cent. on the amount of the loan was under the circumstances and conditions a reasonable charge. And after a very careful consideration of the testimony we can find no sound reason for going beyond that estimate. Considering the security given for the loans, the terms for which they were made, and the compensation previously paid to the appellee for procuring a loan secured by a mortgage, two and one-half per cent. of the amount borrowed would have been not only a fair but a liberal allowance for the service rendered by the appellee in procuring these loans. The testimony of the three witnesses referred to, while in our judgment admissible, was unsatisfactory and inconclusive, because their opinions were largely arbitrary and referable to no precise or definite cases in which compensation was allowed for services quite similar to those rendered under the circumstances of this case. Their testimony was perhaps the best that could be had under the peculiar conditions of this case, and what we say is not intended

in any way to reflect upon the witnesses, because their high personal and professional standing is unquestioned, but the instances cited by them from their own experience, while sufficient to qualify them to express an opinion, were not sufficient to give much weight to it. For instance, one of the witnesses referred to a case in which a five per cent. commission was paid for securing a three-year mortgage loan. But while such a charge might be reasonable for procuring such a loan, it does not follow that it would be reasonable for procuring a call loan secured by collateral having a face value of more than two and a half times its amount.

Nor can any conclusive effect be given to the fact that the bank paid the appellee four per cent. commission for securing the forty thousand dollar loan which was secured by a mortgage. It is conceded that there was no definite agreement as to the rate of commissions in that or any other instance in which loans were procured for the bank by the appellee, and it is obvious from the appellee's own testimony that he would have made no such charge in that case had he not been obliged to pay a bonus of twelve hundred dollars for the loan.

Without prolonging the opinion further, we find that the allowance made in the decree appealed from was excessive, and that the appellee ought properly be allowed for all services rendered by him to the Lafayette Bank the sum of $7,925, that is, $4,200 for his executive services and two and one-half per cent. on the money he borrowed for the bank.

> *Decree reversed and cause remanded that a decree may be entered in accordance with the views expressed in this opinion, the costs in this Court to be paid by the appellee.*