# MARYLAND STATE BAR ASSOCIATION, INC.
## *v.* AGNEW

[Misc. Docket (Subtitle BV) No. 13,
September Term, 1973.]

*Decided May 2, 1974.*

The cause was argued before MURPHY, C. J., and DIGGES,
LEVINE and ELDRIDGE, JJ., and CHARLES E. ORTH, JR., *Chief
Judge of the Court of Special Appeals,* JAMES C. MORTON,

Jr., and C. Awdry Thompson, *Associate Judges of the Court of Special Appeals*, specially assigned.

*E. Dale Adkins, Jr.*, and *Leon H. A. Pierson* for respondent.

*Daniel W. Moylan* and *Alfred L. Scanlan* for Maryland State Bar Association, Inc.

Digges, J., delivered the opinion of the Court.

On October 10, 1973, in the United States District Court for the District of Maryland, Spiro T. Agnew, a member of the Maryland Bar and the respondent in this disciplinary proceeding, having just moments before resigned as Vice President of the United States,[1] entered a plea of nolo contendere to a criminal information which charged him with violating the United States Internal Revenue Code of 1954, § 7201. More specifically, it was alleged that Mr. Agnew did "willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America for the calendar year 1967, by filing and causing to be filed . . . a false and fraudulent joint income tax return . . . ." Following the district court's acceptance of his plea to this felony charge, and after the allocution by Mr. Agnew to which we will later refer, Judge Walter E. Hoffman directed the entry of a final judgment suspending the imposition of sentence for a period of three years conditioned upon the respondent's good behavior and his payment of a $10,000 fine.[2]

---

1. Mr. Agnew was admitted to the bar of this State in 1947. He served as County Executive for Baltimore County from 1962 until 1966, and as Governor of Maryland from 1967 until 1969 when he resigned that office to assume the duties of Vice President of the United States, the high office to which he had just been elected.

2. This judgment of the United States District Court reads:

"On this 10th day of October, 1973, came the attorney for the government and the defendant appeared in person, and 'by counsel.'

"IT IS ADJUDGED that the defendant upon his plea of 'Nolo Contendere', which was accepted by the Court, has been convicted of the offense of (Count No. 1) Tax

Alert to its responsibility to maintain the integrity of the legal system, the Maryland State Bar Association, acting pursuant to the provisions of Chapter 1100, Subtitle BV, of the Maryland Rules of Procedure, promptly, on November 12, 1973, instituted this disciplinary proceeding against the respondent in this Court.[3] By its petition, the Bar Association alleges that the final judgment in the United States District Court, convicting Mr. Agnew of willfully and

Evasion, and the court having asked the defendant whether as charged he has anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the court,

"IT IS ADJUDGED that imposition of sentence, as to imprisonment, be suspended, and Defendant released on Probation for a period of Three (3) Years, upon condition that Defendant at all times will be of uniform good behavior; that Defendant will not violate the laws of the United States, or any State; that as a further condition of Probation, Defendant is to pay a fine in the sum of Ten Thousand Dollars ($10,000.00) within thirty (30) days from this date or otherwise stand committed for nonpayment of said fine and that Defendant shall not be required to be under the supervision of the Probation Officer of this Court unless otherwise ordered by the Court.

"IT IS FURTHER ORDERED that during the period of probation the defendant shall conduct himself as a law-abiding, industrious citizen and observe such conditions of probation as the Court may prescribe. Otherwise the defendant may be brought before the court for a violation of the court's orders.

"IT IS FURTHER ORDERED that the clerk deliver two certified copies of this judgment and order to the probation officer of this court, one of which shall be delivered to the defendant by the probation officer."

3. Prior to the adoption by this Court in 1970 of extensive amendments to Subtitle BV (Discipline and Inactive Status of Attorneys) of Ch. 1100 of the Maryland Rules of Procedure, all disciplinary actions instituted against members of the bar were docketed and conducted in the circuit courts of one of the counties or before the Supreme Bench of Baltimore City. The trial court's ruling was then subject to review by the Court of Appeals upon application by an aggrieved attorney. On October 13, 1970 the disciplinary rules were amended by order of this Court to provide that all charges against a member of the bar shall be filed in and determined by the Court of Appeals. These new rules, however, provide that this Court has authority to transmit the charges to any court in the State for a hearing before a panel of at least three judges (selected by us) who, following such a hearing, are required to return the proceedings to the Court of Appeals recommending, together with the reasons therefor, either that the charges be dismissed or that any of the following types of discipline be imposed: (i) disbarment, (ii) suspension, or (iii) reprimand.

fraudulently attempting to evade or defeat the payment of his federal income tax then due, constitutes conclusive proof of the commission of a crime involving moral turpitude and is conduct prejudicial to the administration of justice which warrants the imposition of disciplinary sanctions by this Court. Following the filing of this petition, as is permitted by Rule BV3 b, we ordered that the proceedings be transmitted to the Circuit Court for Anne Arundel County for a hearing. By that same order, Judges Shirley B. Jones, Ridgely P. Melvin, Jr. and William H. McCullough were designated as the panel of judges to conduct the hearing (Rule BV4) and return to this Court its findings and recommendation as to the proper disposition of the charges. In conscientious discharge of these assigned duties, that panel made the following findings and recommendation:

> "The respondent has admitted his guilt of a crime involving moral turpitude. His conduct, characterized as it must be, as deceitful and dishonest, strikes at the heart of the basic object of the legal profession, and constitutes conduct prejudicial to the administration of justice. In our opinion, the proper administration of justice, the proper respect of the court for itself and a proper regard for the integrity of the profession compel us to conclude that the respondent is unfit to continue as a member of the bar of this state. We shall therefore recommend his disbarment. We see no extenuating circumstances allowing a lesser sanction."

We commence our consideration of the panel's recommendation by referring to the statutory pronouncement of this Court's inherent common law power to regulate the conduct of those attorneys we admit to practice law in Maryland. *In Re Meyerson*, 190 Md. 671, 59 A. 2d 489 (1948). That statute concisely states:

> "Every attorney who shall, after having an opportunity to be heard ... be found guilty of professional misconduct, malpractice, *fraud, deceit,*

*crime involving moral turpitude, conduct prejudicial to the administration of justice,* or of being a subversive person, as defined by the Subversive Activities Act of 1949, shall, by order of the judges finding him guilty, be suspended or disbarred from the practice of his profession in this State." Maryland Code (1957, 1968 Repl. Vol.) Art. 10, § 16 [4] (emphasis added).

That the crime of willful tax evasion involves moral turpitude and constitutes conduct prejudicial to the administration of justice was settled in this State by our predecessors nearly thirty years ago in *Rheb v. Bar Ass'n of Baltimore,* 186 Md. 200, 46 A. 2d 289 (1946), and we reaffirm the reasoning of that landmark case as being applicable to the charge here. Although courts of some other jurisdictions have arrived at a contrary conclusion, we note that the weight of authority seems to support the result reached in that case. *See In Re Teitelbaum,* 13 Ill. 2d 586, 150 N.E.2d 873 (1958); *In Re Alker,* 398 Pa. 188, 157 A. 2d 749 (1960); *In Re Mann,* 151 W. Va. 644, 154 S.E.2d 860 (1967). The

---

**4.** Although adopted subsequent to the wrongful conduct alleged here, to the same effect is Canon 1 of the American Bar Association's Code of Professional Responsibility and its Disciplinary Rule DR 1-102 which were adopted by this Court in 1970. The rule reads:

"DR 1-102 Misconduct.
(A) A lawyer shall not:

    (1) Violate a Disciplinary Rule.
    (2) Circumvent a Disciplinary Rule through actions of another.
    (3) Engage in illegal conduct involving moral turpitude.
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
    (5) Engage in conduct that is prejudicial to the administration of justice.
    (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

We again mention as we did in footnote 1 of our opinion in Bar Ass'n v. Marshall, 269 Md. 510, 511, 307 A. 2d 677 (1973): "Maryland Rule 1230 (added 13 October 1970, effective 2 November 1970) adopted the American Bar Association's Code of Professional Responsibility (adopted by the House of Delegates of the American Bar Association on 12 August 1969). The Maryland State Bar Association adopted the same Code on 9 July 1970 . . . . The Code of Professional Responsibility now appears in Appendix F of Vol. 9B [(The Maryland Rules of Procedure)] of the Maryland Code (1957, 1971 Repl. Vol.) at page 1007 *et seq.*"

respondent does not question the binding effect of the *Rheb* decision in these proceedings, nor does he question that under Rule BV4 f 1 [5] the final judgment in the United States District Court following the nolo contendere plea is conclusive proof of his guilt of the crime charged. Instead, Mr. Agnew has consistently confined his contentions, both before the hearing panel and in his exceptions to its recommendation, to a discussion of the proper sanction to be imposed. He asserts that disbarment would be unduly harsh and that suspension for an appropriate amount of time is more reasonable. In addition, he states that rarely have the courts of this nation or the circuit courts of this State ordered that the extreme sanction be prescribed in a case involving willful tax evasion, and that crimes which victimize the public in general, rather than an attorney's own client, should not result in the imposition of this form of discipline. In light of these concessions and arguments we now address ourselves to a consideration of the appropriate sanction to be imposed here.

The reports of judicial opinions throughout the nation and the learned writings by members of the profession are rife with pronouncements concerning the professional ethical responsibilities of a lawyer. Nevertheless, little else benefits the legal community more from repetition than does a recitation of an attorney's high moral obligation. As was said long ago in what many consider to be the leading treatise on the subject of legal ethics,

> "No man can ever be a truly great lawyer, who is not in every sense of the word, a good man .... There is no profession in which moral character is

---

5. This rule provides:

"In a hearing of charges pursuant to this Rule, a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of such crime. A plea or verdict of guilty, or a plea of nolo contendere followed by a fine or sentence, shall be deemed to be a conviction within the meaning of this Rule. A final adjudication by a judicial tribunal in a disciplinary proceeding that an attorney has been guilty of misconduct shall be considered as conclusive proof of such misconduct in the hearing of charges pursuant to this Rule."

> so soon fixed as in that of the law; there is none in which it is subjected to severer scrutiny by the public .... From the very commencement of a lawyer's career, let him cultivate, above all things, truth, simplicity and candor; they are the cardinal virtues of a lawyer." *G. Sharswood, Professional Ethics* 168, 169 (1844).

Few vocations offer as great a spectrum for good and honorable works as does the legal profession. The attorney is entrusted with the life savings and investments of his clients. He becomes the guardian of the mentally deficient, and potential savior for the accused. He is a fiduciary, a confidant, an advisor, and an advocate. However, the great privilege of serving in all of these capacities does not come without the concomitant responsibilities of truth, candor and honesty. In fact, it can be said that the presence of these virtues in members of the bar comprises a large portion of the fulcrum upon which the scales of justice rest. Consequently, an attorney's character must remain beyond reproach.

A court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary procedures have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public. *Balliet v. Balto. Co. Bar Ass'n,* 259 Md. 474, 270 A. 2d 465 (1970). The administration of justice under our adversary system largely depends upon the public's ability to rely on the honesty of attorneys who are placed in a position of being called upon to conduct the affairs of others both in and out of court. Although a court's power to disbar should be exercised only with restraint, "[w]hen ... unworthiness is shown to be present ... it becomes our sad duty, but nonetheless our obligation to withdraw the privilege to practice law earlier granted by this Court. To fail to do so will impliedly represent to the public that the attorney continues to possess the basic qualities of honor traditionally associated with members of

the bar of this State." *Bar Ass'n v. Marshall,* 269 Md. 510, 519-20, 307 A. 2d 677 (1973). In a proceeding such as this, therefore, the underlying question is "whether, after the conduct of this man, it is proper that he should continue [as] a member of [the legal] profession . . . ." *Ex parte Brownshall,* 2 Cowp. 829 (1778). In the absence of a compelling exculpatory explanation, we think that the answer to this question must be no when an attorney is found guilty of a crime which is deemed to involve moral turpitude and the offense entails the employment of dishonesty, fraud, or deceit which is perpetrated to enrich the offending attorney or to enhance his own well-being at the expense of his client, the state, or any other individual.

As can be discerned from this statement, we see no significant moral distinction between willfully defrauding and cheating for personal gain a client, an individual, or the government. Cheating one's client and defrauding the government are reprehensible in equal degree. In fact, any contention that might be raised to the contrary was laid to rest in this State by the decision of our predecessors in *Fellner v. Bar Ass'n,* 213 Md. 243, 131 A. 2d 729 (1957). That case involved the disciplining of an attorney convicted of the deliberate and systematic practice, over a substantial period of time, of cheating the City of Baltimore by repeatedly inserting slugs into a parking meter. There, in affirming an order of disbarment, this Court said that "[m]orally, the offense was as great as though he had stolen money deposited by others in the meters, and amounts at least to 'fraud or deceit.' " *Id.* at 247. The professional ethical obligations of an attorney, as long as he remains a member of the bar, are not affected by a decision to pursue his livelihood by practicing law, entering the business world, becoming a public servant, or embarking upon any other endeavor. If a lawyer elects to become a business man, he brings to his merchantry the professional requirements of honesty, uprightness, and fair dealing. Equally, a lawyer who enters public life does not leave behind the canons of legal ethics. A willful and serious malefaction committed by a lawyer-public servant brings dishonor to both the bar and

the democratic institutions of our nation, and its destructive effect is thereby magnified.

With these principles well in mind, we turn now to Mr. Agnew, who stands convicted of a willful attempt to evade the payment of income taxes due by him to the United States. This crime, which involves moral turpitude, and is infested with fraud, deceit, and dishonesty, clearly comes within that category we have previously discussed that will result in automatic disbarment when the respondent fails to demonstrate by clear and convincing evidence a compelling reason to the contrary.[6] For this conclusion, we rely in part on the concept that "our method of filing income tax returns is fundamentally based upon the honor of the individual reporting his income . . ." articulated by Judge Hoffman at the time he sentenced the respondent,[7] and in part upon our conclusion that willful tax evasion by a lawyer, while it may not directly injure a client, cheats and defrauds the government which, in our mind, is tantamount to defrauding his client or any other person. On the record before us, we perceive no mitigating circumstances — in fact, all that appears tends to aggravate the gravity of the offense. When the time for sentencing was at hand, Mr. Agnew was granted permission to speak personally and stated:

> "I am aware that witnesses are prepared to testify that I and my agents received payments from consulting engineers doing business with the State of Maryland during the period I was Governor.

> "With the exception of the admission that follows, I categorically deny the assertions of illegal acts on my part made by government witnesses.

---

6. For a discussion of the breach of ethics involved in the commission of income tax evasion by an attorney see Stoddard and Stutsman, *Income Tax Offenses by Lawyers: An Ethical Problem*, 58 *A.B.A.J.* 842 (1972); Comments, *Attorney Disciplinary Proceedings in Illinois: Current Views on Recurring Problems*, 1961 *U.Ill.L.F.* 307; Note, *Tax, Turpitude, And A Technical Test For Disbarment*, 17 Drake L. Rev. 94 (1967).

7. For a further discussion of this concept see Cohen, *Morality and the American Tax System*, 34 Geo. Wash. L. Rev. 839 (1965-66).

"I admit that I did receive payments during the year 1967 which were not expended for political purposes and that therefore these payments were income, taxable to me in that year, *and that I so knew.*

"I further acknowledge that contracts were awarded by state agencies in 1967 and other years to those who made such payments and that I was aware of such awards. I am aware that government witnesses are prepared to testify that preferential treatment was accorded to the paying companies pursuant to an understanding with me when I was Governor. I stress, however, that no contracts were awarded to contractors who were not competent to perform the work and, *in most instances*, state contracts were awarded without any arrangement with the payment of money by the contractor.

"I deny that the payments in any way influenced my official actions. I am confident, moreover, that testimony presented in my behalf would make it clear that I at no time conducted my official duties as County Executive or Governor of Maryland in a manner harmful to the interests of the county or state or my duties as Vice President of the United States in a manner harmful to the Nation; and I further assert that my acceptance of contributions was part of a long-established pattern of political fund-raising in the state. At no time have I enriched myself at the expense of my public trust." (emphasis supplied).

It is difficult to feel compassion for an attorney who is so morally obtuse that he consciously cheats for his own pecuniary gain that government he has sworn to serve, completely disregards the words of the oath he uttered when first admitted to the bar, and absolutely fails to perceive his professional duty to act honestly in all matters.

While apparently accepting much of what we have heretofore related, Mr. Agnew nonetheless urges that we

ignore the hearing panel's recommendation that he be disbarred. He contends that such a resolution is contrary to the well established pattern existing throughout the country of merely imposing a reasonable suspension as the appropriate sanction for an attorney who has been convicted of willful income tax evasion. Without tabulating them, we accept the respondent's counsel's statements that between 1946 and 1973 there were, in the United States, twenty-three disciplinary proceedings reported at the appellate court level which followed the conviction of an attorney for filing a false and fraudulent income tax return; that of this group fifteen resulted in suspension and eight in disbarment; and that in this State the circuit courts have disbarred and suspended an equal number of the four attorneys having similar convictions.[8] Be that as it may, this Court has consistently adhered to the view, both prior to 1970 (when we reviewed disciplinary actions only on appeal at the instance of the respondent-attorney), *Balliet v. Balto. Co. Bar Ass'n, supra; Fellner v. Bar Ass'n, supra; In the Matter of Lombard*, 242 Md. 202, 218 A. 2d 208 (1966); *In Re Williams*, 180 Md. 689, 23 A. 2d 7 (1941); and since that date (when we assumed original and complete jurisdiction over these proceedings), *Bar Ass'n v. Marshall, supra; Bar Ass'n v. Cockrell*, 270 Md. 686, 313 A. 2d 816 (1974); *Maryland St. Bar Ass'n v. Callanan*, 271 Md. 554, 318 A. 2d 809 (1974), that when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances, not shown to be present here, disbarment followed as a matter of course. To do other than disbar the respondent in this case, therefore, would constitute a travesty of our responsibility. Accordingly, the name of the

---

8. The respondent's statistics covering this period further indicate that of the fifty-two disciplinary cases set out in the national reporter system which followed the conviction of an attorney for failure to file an income tax return, fifty terminated with suspensions and two with disbarments. In Maryland, following such convictions all six attorneys received no more than a suspension in the circuit courts. Since failure to file is not the charge with which we are here concerned, the statistics mentioned in this note are largely irrelevant and we express no opinion here as to a proper sanction for this type of misconduct.

respondent, Spiro T. Agnew, will be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*