732 A.2d 876

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Pamela Louise SHAW.**

**Misc. AG No. 75, Sept. Term, 1997.**

Court of Appeals of Maryland.

July 9, 1999.

638

Melvin Hirshman, Bar Counsel and Glenn Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

· Linwood Hedgepath, Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The issues we address today are twofold. First, we decide whether an attorney who researches stocks for a disabled person's estate is engaged in the practice of law. Second, we shall determine under what circumstances an attorney may be disciplined for violations of the Rules of Professional Conduct, occurring while not practicing law.

## I.

The Attorney Grievance Commission of Maryland, the petitioner, acting through Bar Counsel and at the direction of the Review Board, see Maryland Rule 16–709,[1] filed a Petition for Disciplinary Action against Pamela L. Shaw, the respondent, charging her with misconduct, as defined by Rule 16–701(k),[2]

---

1. Maryland Rule 16–709, as relevant, provides:

   "a. Who may file. Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

2. That section, as relevant, states:

in connection with her handling of a tax capital gains and loss analysis for the estate of a disabled person, John Berger. The petition alleged that the respondent, who had virtually no experience in determining the losses and gains of stocks, was hired by Michelle Towson, the guardian of the property of Mr. Berger, to prepare a capital gains and loss analysis, a matter she was not competent to handle, for which she charged the estate an inordinate fee of $20,000, of which she was paid between $18,500 and $19,000. According to the petitioner, the product of her work was "completely and utterly worthless" and incorrect. The petition also alleged that the respondent held herself out as an attorney by using the term "esquire" and charging a "fee for professional services rendered." In addition, the petitioner charged, the respondent knowingly and willfully failed to respond to Bar Counsel's requests for information. Specifically, the petition alleged that the respondent violated the following disciplinary rules: 1.1 (Competence);[3] 1.5(a);[4] 8.1 (Bar Admission);[5] and 8.4(a), (c), and (d).[6]

---

"Misconduct.-'Misconduct' means an act or omission by an attorney, individually or in concert with any other person or persons which violates the Maryland Rules of Professional Conduct, as adopted by Rule 16–812, whether or not the act or omission occurred in the course of an attorney-client relationship."

**3.** That rule provides:
"A lawyer shall provide competent representation to a client.Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**4.** Rule 1.5(a) provides:
"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
"(3) the fee customarily charged in the locality for similar legal services;
"(4) the amount involved and the results obtained;
"(5) the time limitations imposed by the client or by the circumstances;

We referred the case to the Honorable Richard T. Rombro, of the Circuit Court for Baltimore City, for hearing. *See* 16–711(a).[7] Following the hearing, at which the respondent, who was represented by counsel, was present and testified,[8] Judge Rombro made the following findings of fact:

> "(6) the nature and length of the professional relationship with the client;
> "(7) the experience, reputation, and ability of the lawyer or lawyers performing the
> "(8) whether the fee is fixed or contingent."

5. Rule 8.1 provides, as relevant:

> "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
> \* \* \* \*
> "(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority...."

6. Rule 8.4 provides in part:

> "It is professional misconduct for a lawyer to:
> "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> \* \* \*
> "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> "(d) engage in conduct that is prejudicial to the administration of justice;...."

7. Maryland Rule 16–711(a) provides:

> "(a) Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

8. Rather than answer, the respondent moved to dismiss the proceedings for lack of jurisdiction. She argued that the hearing court lacked jurisdiction because, at the time of the alleged conduct, she was not a practicing attorney in this State, that her actions were neither a crime nor wrongdoing, and, in any event, did not constitute the practice of law. That motion was denied. Despite the respondent's failure to answer the petition or respond to the petitioner's request for admission of facts and genuineness of documents, a full hearing was conducted, Judge Rombro ruling that, due to the seriousness of the matter, the petitioner should be put to its proof.

"1. That the Respondent is a member of the Maryland Bar and although on the inactive list, as a result of non-payment to the Clients' Security Trust Fund, she is subject to disciplinary action. *Attorney Grievance Commission v. Hopp*, 330 Md. 177 [623 A.2d 193] (1993);

"2. That the Respondent held herself out as an attorney when she was seeking to do the work on the Berger matter. The court notes that her letter of March 1st, 1993 ... is signed 'Pamela L. Shaw, Esq.';

"3. That the court finds as a fact that the Respondent had no experience, and indeed little knowledge, of the workings of the stock market or the evaluation of an estate consisting of stocks and bonds;

"4. That the $20,000.00 fee charged for a service which would have been performed for nothing by the stockbroker was an inordinate fee;

"5. This court believes and finds that the Respondent undertook this task as legal work. The respondent testified that she did not believe that her work for the guardian was the practice of law. Even if the Respondent is correct, where the act complained of is 'committed in a nonprofessional capacity ... it ... bears upon the fitness of a lawyer to practice his profession.' *Attorney Grievance Commission v. Lazerow*, 320 Md. 507, 513 [578 A.2d 779] (1990), citing *Attorney Grievance Commission v. Silk*, 279 Md. 345 [369 A.2d 70] (19[8]7[1977]). In Vice President Agnew's disbarment proceeding, the Court of Appeals declared that "The professional ethical obligations of an attorney, as long as he remains a member of the bar, are not affected by a decision to pursue his livelihood by practicing law, entering the business world, becoming a public servant, or embarking upon any other endeavor." *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 550 [318 A.2d 811] (1974)."

---

The respondent also moved that Judge Rombro recuse himself, alleging that he had knowledge of the underlying guardianship. The motion was denied. That ruling is not at issue in these proceedings, no exception having been taken to it.

The hearing court concluded as follows as to the charged misconduct:

"1. Rule 1.1. Competence. The court finds that the Respondent violated this rule. As noted, the Respondent had no special knowledge or skill involving the matter which she undertook for the guardian. Indeed, when questioned as to the methodology which she used in determining the evaluations of the portfolio, she was unable to recall or to respond to any of the questions. This court finds that the documents submitted to the guardian were valueless, and were provided solely for the purpose of collecting a fee.

"2. The Respondent is also charged with violation of Rule 1.5 dealing with fees. The Rules of Professional Conduct require that the fee should be reasonable, and sets forth eight matters to be considered in determining the reasonableness of the fee. Without setting forth all of the criteria, this court finds that the amount charged in this case was unreasonable when measured against these guidelines. The matter involved was not novel or difficult; its undertaking did not preclude other employment by the Respondent; although the amount involved was substantial, the results obtained were worthless; the Respondent had no particular experience, reputation or special ability to perform the services; and while there was no testimony as to what fee would customarily be charged in this locality by a lawyer performing the same task, there was testimony from a stockbroker that this service is performed by his company for no charge.

"3. The Petitioner charged that the Respondent violated Rule 8.1 by knowingly failing to respond to a lawful demand for information from a disciplinary authority. This court finds that the Respondent did violate this rule. Assuming that the Respondent did not receive the first two letters from Bar Counsel (an assumption that is generous to the Respondent), it is clear that she eventually received the letters when they were left with her nephew. She had two subsequent conversations with the investigator for the Petitioner, and she failed to respond to either. The Respondent

even failed to answer the request for Admission of Facts. This court therefore concludes that the Respondent not only failed to respond, but that such failure was knowing and intentional on her part.

"4. Finally, the Respondent is charged with violation of Rule 8.4, Misconduct. This court finds that the Petitioner has not met the burden of showing a violation of Subsection (a) of Rule 8.4, that Respondent acted or assisted or induced another person to violate the Rules of Conduct or did so through the acts of another person.

"This court finds that the Respondent did violate Subsection (c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. This court finds by clear and convincing evidence that the conduct of the Respondent in holding herself out as competent in this area and charging an excessive fee for the services she rendered amounts to dishonesty and misrepresentation.

"This court finds that the Respondent also violated Subsection (d) of Rule 8.4, engaging in conduct prejudicial to the administration of justice. The Respondent knew that her report [ ] would be used by the guardian in the administration of the guardianship estate, which would by definition amount to conduct prejudicial to the administration of justice."

Unlike the petitioner, who took no exceptions to the hearing court's findings of fact and conclusions of law, the respondent excepted to several of the findings of fact, *i.e.*, that she failed to respond to discovery, that she held herself out as an attorney, that she had little knowledge of the workings of the stock market, that the fee was inordinate, and that she had engaged in the practice of law, arguing that they were clearly erroneous. The respondent also excepted to the hearing court's conclusions of law, similarly contending that they were erroneous. In addition to the conclusions with respect to the Rule violations, she challenges the conclusion that she is subject to discipline as a lawyer, despite being on the inactive list.

## II.

### A.

The respondent's exception to the hearing court's finding and conclusion that she did not respond to discovery requests can be disposed of easily and quickly. Other than stating the exception, the respondent did not further pursue the matter. The exception, therefore, is overruled. As will become clear hereafter, the case is being remanded to the hearing court for further proceedings. Consequently, whether to impose a sanction in respect of this violation and, if so, what the appropriate sanction is, must await our subsequent review of this case.

### B.

This Court has original and complete jurisdiction over attorney disciplinary proceedings. Md. Rule 16–709(b); *Attorney Grievance Comm'n v. Adams*, 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent*, 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell*, 328 Md. 276, 287, 614 A.2d 102, 108 (1992). Accordingly, the ultimate decision as to whether a lawyer has violated the Rules of Professional Conduct rests with this Court. *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 392, 692 A.2d 465, 469 (1997); *Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 599, 667 A.2d 659, 663 (1995); *Attorney Grievance Comm'n v. Joehl*, 335 Md. 83, 88, 642 A.2d 194, 196 (1994). Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence. *Attorney Grievance Comm'n v. Powell*, 328 Md. 276, 287, 614 A.2d 102, 108 (1992); *Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990). The "hearing court's findings of fact are prima facie correct and will not be disturbed unless they are shown to be clearly erroneous," however. *Attorney Grievance Comm'n v. Garland*, 345 Md. at 392, 692 A.2d at 469 (citing *Attorney*

*Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)).

■ We can dispose of the respondent's argument that she is not subject to discipline by this Court because she was not a practicing attorney at the time of the alleged misconduct rather quickly. We have stated that, to be subject to discipline, one must be an attorney. *See Attorney Grievance Comm'n v. Hyatt,* 302 Md. 683, 689, 490 A.2d 1224, 1227 (1985). As defined by Rule 16–701, former Rule BV.1, an attorney is:

> "any person admitted by the Court of Appeals to practice law. For purposes of discipline or inactive status, the term also includes a member of the bar of any other state, district, or territory of the United States who engages in the practice of law in this State, or who holds himself or herself out as practicing law in this State, or who has the obligation of supervision or control over another attorney who engages in the practice of law in this State."

*Attorney Grievance Comm'n v. Hopp,* 330 Md. 177, 183, 623 A.2d 193, 196 (1993) (an attorney admitted to the Maryland Bar, who has not resigned from the Maryland Bar, although practicing only in California, is subject to this State's disciplinary rules) (citing *Attorney Grievance Comm'n v. Hyatt,* 302 Md. 683, 688–89, 490 A.2d 1224, 1227 (1985)). The respondent has been admitted to the Bar of this State and she has not tendered her resignation. Accordingly, she remains subject to the disciplinary authority of this Court, notwithstanding her being on the inactive list of attorneys, by virtue of her failure to pay the Client Security Trust Fund assessment.

### C.

■ In this case, the hearing court's finding that the respondent was engaged in the practice of law was premised on the respondent's affixing the designation "Esq." to a piece of correspondence to Ms. Towson. From this, it concluded that the respondent "undertook this task as legal work." Although "prima facie correct and not [to] be disturbed unless clearly

erroneous," *Attorney Grievance Comm'n. v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 474 (1996), to be sustained, this finding of fact must be supported by clear and convincing evidence. *See Attorney Grievance Comm'n v. Kemp,* 335 Md. 1, 9, 641 A.2d 510, 514 (1994). Since the respondent filed exceptions, we are required to make an " 'independent', detailed review of the complete record with particular reference to the evidence relating to the disputed factual finding." *Attorney Grievance Comm'n v. Alison,* 349 Md. 623, 629, 709 A.2d 1212, 1215 (1998) (quoting *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 516, 307 A.2d 677, 680–81 (1973)). *See Attorney Grievance Comm'n v. Ober,* 350 Md. 616, 625, 714 A.2d 856, 861 (1998).

■ The primary issue in this case is whether the work the respondent did for the guardian constituted the practice of law. What constitutes the practice of law is a determination that, ultimately, this Court makes, *see Public Serv. Comm'n v. Hahn Transp., Inc.,* 253 Md. 571, 583, 253 A.2d 845, 852 (1969); *Lukas v. Bar Ass'n of Montgomery County, Inc.,* 35 Md.App. 442, 447, 371 A.2d 669, 672, *cert. denied,* 280 Md. 733 (1977), although some guidance has been provided by the General Assembly. *See* Maryland Code (1989, 1995 Repl.Vol.), § 10–101(h) of the Business Occupations & Professions Article, which defines "Practice law" to include:

"(h)(1) "Practice law" means to engage in any of the following activities:

(i) giving legal advice;

(ii) representing another person before a unit of the State government or of a political subdivision; or

(iii) performing any other service that the Court of Appeals defines as practicing law.

(2) "Practice law" includes:

(i) advising in the administration of probate of estates of decedents in an orphans' court of the State;

(ii) preparing an instrument that affects title to real estate;

(iii) preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; or

(iv) giving advice about a case that is or may be filed in a court."

■ This Court has stated that the practice of law includes "[u]tilizing legal education, training, and experience [to apply] the special analysis of the profession to a client's problem." *Kennedy v. Bar Ass'n of Montgomery County, Inc.*, 316 Md. 646, 662, 561 A.2d 200, 208 (1989). Further, because "the very acts of interview, analysis and explanation of legal rights constitute practicing law in Maryland," *id.* at 666, 561 A.2d at 210, depending on the circumstances, meeting with prospective clients may also constitute the practice of law.

■ When determining whether an activity constitutes the practice of law, this Court has said, a court must "consider each state of facts and determine whether it falls within the fair intendment of the term." *In re Application of Mark W.*, 303 Md. 1, 8, 491 A.2d 576, 579 (1985) (quoting *Grievance Committee v. Payne*, 128 Conn. 325, 329, 22 A.2d 623, 625 (1941)). In that regard, we are aware that ' " practice of law [is] a term of art connoting much more than merely working with legally-related matters." ' *In Re Application of Mark W.*, 303 Md. 1, 19, 491 A.2d 576, 585 (1985) (quoting *Petition of Nenno*, 472 A.2d 815, 820 (Del.1983)). The focus of the inquiry is, in fact, "whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *In re Discipio*, 163 Ill.2d 515, 206 Ill.Dec. 654, 645 N.E.2d 906, 910 (1994); *Louisiana State Bar Ass'n v. Edwins*, 540 So.2d 294, 299 (La.1989) ("Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer."). Thus, in *In re Mark*, this Court concluded that a Bar applicant, who had served as Hearing Examiner for the Maryland Department of Employment & Training, where he assigned cases, reviewed decisions, and provided guidance on issues that arose, was not engaged in the practice of law and, so, was not eligible to take

the attorney's examination. 303 Md. at 4–6, 491 A.2d at 577–79. On the other hand, "[w]here trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Lukas v. Bar Ass'n of Montgomery County,* 35 Md.App. 442, 448, 371 A.2d 669, 673, *cert. denied,* 280 Md. 733 (1977) (quoting *F.T. Vom Baur, Administrative Agencies and Unauthorized Practice of Law,* 48 A.B.A. J. 715, 716 (1962)).

We have also recognized, "The Hallmark of the practicing lawyer is responsibility to clients regarding their affairs, whether as advisor, advocate, negotiator, as intermediary between clients, or as evaluator by examining a client's legal affairs." *In Re Application of R.G.S.,* 312 Md. 626, 632, 541 A.2d 977, 980 (1988). Like defining the activity that constitutes the practice of law, "[w]hat constitutes an attorney-client relationship is a rather elusive concept." *Folly Farms I, Inc. v. Trustees,* 282 Md. 659, 670, 387 A.2d 248, 254 (1978). The existence of the relationship does not depend on there being a formal fee arrangement. *See Central Cab Co. v. Clarke,* 259 Md. 542, 549–50, 270 A.2d 662, 666–67 (1970). As we have pointed out:

> "Although an agreement upon the amount of a retainer and its payment is rather conclusive evidence of the establishment of the attorney-client relationship, the absence of such an agreement or payment does not indicate conclusively that no such relationship exists. Indeed, the payment of fees is not a necessary element in the relationship of attorney and client. The services of an attorney to the client may be rendered gratuitously but the relationship of attorney and client nonetheless exists."

*Id.* (citing *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson,* 381 F.2d 261 (1967), *cert. denied,* 390 U.S. 946, 88 S.Ct. 1033, 19 L.Ed.2d 1135 (1968)). Indeed, the determination of whether an attorney-client relationship exists can, and often must, be implied from the facts and circumstances of the

given case. *See Crest Investment Trust v. Comstock,* 23 Md.App. 280, 296, 327 A.2d 891, 901 (1974). An important consideration of the determination may be whether legal advice was being sought by the client. *See E.I. du Pont de Nemours & Co. v. Forma–Pack, Inc.,* 351 Md. 396, 421, 718 A.2d 1129, 1141 (1998). On the other hand, an attorney-client relationship may be found to exist even when the services performed by the attorney are not strictly legal in character. *See Page v. Penrose,* 147 Md. 225, 227–28, 127 A. 748, 749 (1925). The attorney in *Page* was retained as an attorney, although the work to be performed could have been completed by a non-lawyer. *See also Attorney Grievance Comm'n v. Parker,* 306 Md. 36, 38–41, 506 A.2d 1183, 1184–86 (1986), where the attorney received $30,000 from his neighbor, who had sought his assistance, deposited it in his escrow account and made loans at high rates of interest. A formal attorney/client relationship was not established in *Parker,* however, the hearing court concluding: "[i]n a transaction such as this which involved evaluating the safety of investments, passing upon the validity of instruments evidencing debt, security therefor, and negotiating the terms and interest rates of loans ... that the relationship of attorney and client existed even though neither attorney nor client thought so and there was no formal retainer or agreement as to fee." 306 Md. at 43, 506 A.2d at 1187. The *Parker* Court determined that "the trial judge did not clearly err in the conclusions he drew from the evidence before him." *Id.* at 46, 506 A.2d at 1188.

It does not follow, however, that an attorney-client relationship automatically is created whenever, and merely because, an attorney may perform a service for a person with whom he or she may have a business or other arrangement that is legal in character. *See Smith v. Martin,* 154 Md. 462, 473–74, 140 A. 593, 598 (1928), in which we said:

> "The evidence in this case fails to disclose that the relation of attorney and client existed between Mr. Martin and Mrs. Smith. Mr. Martin was a stranger to her. It is true he was a lawyer, but he had at no time been her attorney, nor was he acting as her attorney in the transaction. ....[I]t was

only to oblige and accommodate her that he agreed to prepare it saying " "If you will trust me, I will trust you." " This expression did, in no way, create the confidential relations of attorney and client. .... [Further] [t]he fact that the defendant, a party to a contract, was an attorney, and that he was willing to prepare the lease without compensation, was not enough to establish of attorney and client."

Even when there is no attorney-client relationship, we have acknowledged, in attorney discipline cases, that the fact that one party to a business relationship is an attorney may be an important consideration in influencing the other party to enter into the business relationship with them, thereby imposing on the attorney certain ethical obligations. *See Attorney Grievance Comm'n v. Kramer*, 325 Md. 39, 47, 599 A.2d 100, 104–05 (1991)(fact that Kramer was an attorney motivated Mirsky to enter a business venture with him and imposed ethical obligations on Kramer).

As we have seen, the hearing court found that the respondent held herself out as a lawyer, and, despite having little experience and knowledge of the stock market, undertook the task of doing an analysis of the gains and losses of the guardianship estate's stock portfolio as legal work. The only support the court gave for the former finding is the respondent's use of the term "Esq." in correspondence with the disabled person's guardian. Because that rationale provides an insufficient basis for the finding that the respondent held herself out as a lawyer, the hearing court's conclusion in that regard was clearly erroneous. The court has provided no analysis or rationale for its finding that the respondent undertook the stock valuation as legal work. It did not determine whether the respondent and the guardian entered into an attorney-client relationship, although an analysis of the facts and circumstances of the undertaking would have provided information from which that determination could have been made. Certainly, the nature of the work, not requiring, as far as this record reveals, "legal knowledge and skill in order to apply legal principles and precedent," is not "legal" work.

Consequently, having concluded that the finding that the respondent held herself out as an attorney is clearly erroneous, on this record, we cannot determine whether an attorney-client relationship was formed between Ms. Towson and the respondent; it is at least possible that, after analyzing the facts and circumstances under which the guardian offered the assignment, and the respondent accepted it, the hearing court could have found that one was entered into.

## III.

We next consider whether the respondent may be sanctioned for a violation of the Rules of Professional Conduct for conduct that does not constitute the practice of law. This requires that, once again, we address the purpose of disciplinary proceedings. On numerous occasions, we have said that the purpose of disciplinary proceedings is to protect the public, rather than to punish the erring attorney, although concepts of general and specific deterrence are consistent with that primary goal. *See Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Attorney Grievance Comm'n v. Alison,* 317 Md. 523, 540–41, 565 A.2d 660, 668 (1989). Thus, the public interest is served when this Court imposes sanctions on attorney misconduct, demonstrating to members of the legal profession the type of conduct that will not be tolerated. *See Attorney Grievance Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). By imposing such sanctions the Court fulfills its responsibility "to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute." *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974).

In order to maintain the integrity of the bar, we have determined that, not only misconduct arising in the practice of law is sanctionable, but that conduct by an attorney arising in

the attorney's other, non-professional pursuits is also a proper subject of disciplinary proceedings. *See e.g., Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 692 A.2d 465 (1997)(failure to report to court-ordered DWI clinic); *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 619 A.2d 100 (1993) (breaking and entering); *Attorney Grievance Comm'n v. Lazerow,* 320 Md. 507, 578 A.2d 779 (1990)(misrepresentation and misappropriation of home purchasers' money); *Attorney Grievance Comm'n v. Greenspan,* 313 Md. 180, 545 A.2d 12 (1988)(making false representations to a savings and loan); *Attorney Grievance Comm'n v. Proctor,* 309 Md. 412, 524 A.2d 773 (1987) (possession of controlled dangerous substances); *Attorney Grievance Comm'n v. Brewster,* 280 Md. 473, 374 A.2d 602 (1977)(bribery); *Attorney Grievance Comm'n v. Silk,* 279 Md. 345, 369 A.2d 70 (1977) (mishandling, misappropriating and/or embezzling funds of the Mount St. Joseph Father's Club); *Maryland State Bar Ass'n v. Hirsch,* 274 Md. 368, 335 A.2d 108 (1975) *cert. denied* 422 U.S. 1012, 95 S.Ct. 2638, 45 L.Ed.2d 676 (1975) (bribery); *Agnew,* 271 Md. at 551, 318 A.2d at 815 (willfully evading payment of income taxes); *Fellner v. Bar. Ass'n of Baltimore City,* 213 Md. 243, 131 A.2d 729 (1957) (inserting slugs into parking meters).

*Silk* involved disciplinary proceedings against an attorney, employed in the State comptroller's office, for conduct committed when he was president of a fathers' club. *See Silk, supra,* 279 Md. 345, 369 A.2d 70. The complaint alleged that while president of the club, Silk had engaged in conduct involving moral turpitude and dishonesty, fraud, and deceit, in violation of Disciplinary Rules DR 1–102A (3) and (4), when he mishandled, misappropriated and/or embezzled funds of the Mount St. Joseph Father's Club of Mount St. Joseph High School in Baltimore. *See id.* at 346, 369 A.2d at 71. Concluding that he engaged in the conduct alleged, although recognizing that the conduct was committed in his nonprofessional capacity, this Court ordered his disbarment, stating, "there appears to be no sound reason for regarding misappropriations committed in a nonprofessional capacity more leniently than those committed in a professional capacity. Each involves a breach of trust or

of a fiduciary relationship and bears equally on the fitness of a lawyer to practice his profession." *Id.* at 348, 369 A.2d at 71. In *Agnew*, quoted in *Lazerow*, 320 Md. at 513–14, 578 A.2d at 782, we were clear: "The professional ethical obligations of an attorney, as long as he remains a member of the bar, are not affected by a decision to pursue his livelihood by practicing law, entering the business world, becoming a public servant, or embarking upon any other endeavor." *Maryland State Bar Ass'n v. Agnew*, 271 Md. at 550, 318 A.2d at 815.

Central to our holdings in the aforementioned cases, as *Agnew* and *Lazerow* make clear, are legally supported findings adequate to support the conclusion that the lawyers had engaged in dishonest, fraudulent conduct or, at the very least, conduct prejudicial to the administration of justice. Our sister States agree. *See Florida Bar v. Schultz*, 712 So.2d 386 (Florida 1998)(suspension for intentionally misrepresenting intent to pay a travel agent); *In re Warren*, 167 Vt. 259, 704 A.2d 789 (1997) (public reprimand was warranted, where an attorney sent letters offering to help a woman get divorced at no cost to her, but great expense to her husband); *In the Matter of Pepe*, 140 N.J. 561, 659 A.2d 1379 (1995)(suspension for using marijuana and sharing it with others); *Iowa State Bar Ass'n v. Hall*, 463 N.W.2d 30, 31 (Iowa 1990) (falsely obtaining loan from a bank, giving false deposition testimony about the loan, and negligently entering into business transactions with clients warranted disbarment); *Haimes v. Mississippi Bar*, 601 So.2d 851, 852 (Miss.1992) (disbarment of an attorney who mishandled funds while serving as guardian for an estate); *In re Kennedy*, 542 A.2d 1225, 1226–27 (D.C.App.1988)(suspension of attorney for deceiving a bank into giving him a loan).

██ The rationale offered by the New Jersey Supreme Court in *Pepe* provides insight into the guiding force behind many of these decisions. That Court said:

"Misconduct by an attorney, whether private or professional in nature, that evidences a want of the good character and integrity that are essential for a person to engage in the practice of law constitutes a basis for discipline. The obli-

gation of an attorney to maintain the high standard of conduct required by a member of the bar applies even to activities that may not directly involve the practice of law or affect the attorney's clients." (citations omitted)

659 A.2d at 1383. The Court in *Pepe* further observed, and we agree, that "[c]ontrition and mortification alone cannot repair and restore public confidence in the profession. Only adequate discipline can accomplish that because it enables the public to realize that the judiciary will not tolerate or excuse such conduct by attorneys and will vigilantly act to rectify and prevent such conduct." *Id.* at 1384. *See also In Matter of Bock,* 128 N.J. 270, 607 A.2d 1307, 1310 (1992), in which the New Jersey Supreme Court stated, on the same subject:

"disciplinary power is not confined to the area covered by the canons. It has long been settled here and elsewhere that any misbehavior, private or professional, which reveals lack of the character and integrity essential for the attorney's franchise constitute a basis for discipline. .... [I]f misbehavior persuades a man of normal sensibilities that the attorney lacks capacity to discharge his professional duties with honor and integrity, the public must be protected by him."

## IV.

In summation, the hearing court found that "the Respondent had no experience, and little knowledge, of the workings of the stock market or the evaluation of an estate consisting of stocks and bonds." Inexperience, however, does not equate to, nor is it the equivalent of, dishonesty. The hearing court also found that "Respondent did violate Subsection [8.4](c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. This court finds by clear and convincing evidence that the conduct of the Respondent in holding herself out as competent in this area and charging an excessive fee for the service she rendered amounts to dishonesty and misrepresentation" and that the respondent violated Rule 1.1, by undertaking a matter in which she had no

experience. The only support for these findings is the respondent's aforementioned inexperience in undertaking to perform the very task for which the hearing court determined she was ill prepared, but nevertheless holding herself out as competent, presumably because she was a lawyer, when she in fact was not. The findings, thus, may be colored by the hearing court's conclusion that the respondent was holding herself out as a lawyer and undertook the task as a lawyer. We have concluded that the former finding was clearly erroneous. That leaves nothing on which to support the latter finding except speculation that the respondent and the guardian were in collusion. But the hearing court, by finding that the petitioner did not meet its burden with respect to the alleged Rule 8.4(a) violation, has rejected any such charge.

As we have seen, our precedents indicate that lawyers are disciplined for conduct occurring when they are not practicing law only if that conduct is dishonest or is conduct that reflects adversely on the profession, not each time they may undertake tasks for which they are under qualified or may be inexperienced. The focus of this case was on the respondent's status as a lawyer and not on the quality of the conduct without regard to that status. From the hearing court's opinion, we can not discern that the respondent's conduct, other than her violation of Rule 8.1, is sanctionable. Because we acknowledge that the record may contain evidence indicating that the respondent was practicing law or had entered into a lawyer-client relationship with the guardian, the case will be remanded for further findings in that regard.

It is so ordered.