890 A.2d 273

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Norman Joseph LEE, III.**

**Misc. Docket AG No. 68 Sept. Term, 2004.**

Court of Appeals of Maryland.

Jan. 12, 2006.

518

John C. Broderick, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for the Atty. Grievance Com'n of MD), for Petitioner.

Norman Joseph Lee, Bel Air, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, Judge.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary Or Remedial Action against Norman Joseph Lee, III, the respondent. The petition charged that respondent violated Rules 1.3 (Diligence),[2] 1.4 (Communication),[3] and 1.16 (Declining or terminating representation)[4] of the Maryland Rules of Professional Conduct (MRPC), as adopted by Rule 16–812.

---

1.  Maryland Rule 16–751, in relevant part, provides:

    (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2.  Rule 1.3 requires "[a] lawyer [to] act with reasonable diligence and promptness in representing a client."

3.  Rule 1.4 provides, in relevant part:

    (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

    Effective July 1, 2005, the format of Rule 1.4(a) was modified as follows:

    (a) A lawyer shall:

    * * * *

    (2) keep the client reasonably informed about the status of the matter;

    (3) promptly comply with reasonable requests for information

    . . . .

4.  Rule 1.16 provides, in relevant part:

    (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

We referred the case, pursuant to Rule 16–752(a),[5] to the Honorable Lawrence R. Daniels, of the Circuit Court for Baltimore County, to conduct a hearing and to make Findings of Fact and Conclusions of Law. When respondent did not answer the petition, an order of default was entered against him on April 14, 2005. Pursuant to the Order of Default, a hearing was set for June 30, 2005, at 9:30 a.m. Prior to the June hearing, respondent filed a motion to vacate the Order of Default and an answer to the Petition for Disciplinary Action. Petitioner responded to the motion to vacate and respondent's answer to the Petition for Disciplinary or Remedial Action, requesting that the court deny the motion to vacate the Order of Default and permit the case to proceed, as scheduled, upon the default order on June 30, 2005. The court agreed with petitioner and denied respondent's motion. At the hearing on June 30, 2005, respondent argued that the court should vacate the order of default. He conceded that there is no court record acknowledging the timely receipt of his response to the petition for disciplinary action. Respondent contended, however, that his office records reveal that he sent the court a timely response. Notwithstanding the absence of a timely response, respondent reargued that the court should vacate the Order of Default. The hearing court responded by pointing out that any motion to vacate should have been filed within thirty days after entry of the Order of Default and was not, and that respondent did not, pursuant to Rule 2–613(d), "state the reasons for the failure to plead and the legal and factual basis for the defense of the claim." The hearing court further stated:

Again, I just interrupt because I want the record to be clear that though Mr. Lee did in fact enter his motion to set aside

5. Rule 16–752(a) provides:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

the default or vacate the default, he did not give a reason why there was failure to plead, he did not offer any legal or factual basis.

In addition, pursuant to Rule 16–757(c),[6] the court found facts by the clear and convincing standard and concluded that respondent violated Rule 1.3 of the Maryland Rules of Professional Conduct.

The record shows that Norman Joseph Lee, III, was admitted to the Maryland Bar on March 31, 1981. Bobby D. Coleman, complainant, retained respondent to seek post-conviction relief in the Circuit Court for Washington County. The retainer agreement was dated July 8, 2002, and signed by respondent and witnessed by his secretary. Respondent accepted a fee of $3,500, paid by Mr. Coleman's mother on behalf of her son, as a retainer for services to be rendered in the matter. Thereafter, on August 2, 2002, Mr. Lee entered his appearance in the Circuit Court for Washington County on behalf of Mr. Coleman. In Mr. Coleman's letter to the Attorney Grievance Commission, dated July 10, 2003, he complained that, "as yet he had never met [Mr. Lee] nor had the ability to discuss the job I'm hiring him to perform." Following Mr. Coleman's complaint to the Commission, Mr. Lee scheduled an appointment to interview Mr. Coleman at the prison facility and met with Mr. Coleman on August 23, 2003. This meeting occurred more than a year after Mr. Coleman retained respondent to represent him.

Specifically, the hearing court found that it took respondent almost one year after he received payment of the retainer to visit Mr. Coleman, who was then incarcerated in Washington

---

**6.** Maryland Rule 16–757(c) provides:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

County. Further the hearing court noted, from the evidence, that "there's no indication that [respondent] either took action on Mr. Coleman's behalf to file some sort of pleading or indicate that there was no basis to do so and make an accounting to Mr. Coleman of the monies that had been spent out of the retainer and then refund anything that remained if there was a remainder." Based upon these findings of fact, the hearing court concluded that respondent displayed a lack of diligence in violation of Rule 1.3 of the MRPC.

With respect to the violation of Rule 1.4, the hearing court found that respondent attempted to keep in contact with his client and his client's mother. The hearing court made no other specific findings, even though the testimony and documentary evidence in the record shows that Mr. Coleman wrote, approximately in July or early August 2002, to Mr. Lee and had requested that his attorney communicate about any new developments or discoveries in his case and asked Mr. Lee to advise as to what the chances were of having his "conviction reversed in the post-conviction proceeding." In addition, Mr. Coleman pointed out that "he had been experiencing difficulties getting the respondent's phone number on the prison's institutional phone list and that's why he did not call him personally" (Paragraph 10. Petition For Disciplinary Action). This additional information was offered, apparently, to explain why Mr. Coleman's mother was acting as a conduit for her son with regard to specific questions to Mr. Lee about the progress on her son's case. On August 21, 2002, she wrote to respondent and inquired "as a matter of a status report on any research and legal preparation conducted for Bobby's case." Within her letter she made reference to her own legal research in New York, and inquired whether her son's case involved issues relating to wrongful conviction, mistaken eyewitness testimony, admissibility of any prior crimes, search and seizure violations, and evidence disclosure and warrants. Mr. Coleman's mother also "questioned respondent about the pre-sentence report containing false or misleading statements that it would have otherwise impacted the sentence imposed as well as whether or not Maryland Rule 4–342 could apply to

her son's case." Moreover, she wanted to know whether "Bobby's case [was] effected [sic] by the recent Supreme Court rulings applying Apprendi?" Further, she questioned how much time she could expect Mr. Lee to take in performing research and copied the letter to Mr. Coleman.

Approximately 2 months later, by letter dated October 16, 2002, Mr. Lee wrote to Mr. Coleman and apologized to Mr. Coleman and his mother "for the delay in the prosecution of your case." Additionally, "[h]e acknowledged that Mrs. Coleman's August 21 letter referenced four cases but that he had 'not had the benefit of reviewing these cases but [was] in the process of reviewing same and [would] advise her accordingly.'" There is no evidence in the record, however, that Mr. Lee ever followed up on his promise either to review the cases referenced or to give any advice. Averment number 12 of the petition for disciplinary action was that, "[o]ther than th[e] meeting [with Mr. Coleman at the prison facility in August 2003, Mr. Lee] performed no substantive legal services on behalf of Bobby D. Coleman."

In finding no violation of Rule 1.4, the hearing court observed that

the court notes that the client is Mr. Coleman and not his mother. I don't believe there is any requirement under the Canons of Professional Ethics that the lawyer keep in touch with the person who paid the fee. It's the client who is and should be the centerpiece of all the attorney's efforts.

Petitioner takes exception to the hearing court's failure to find a violation of Rule 1.4. The respondent did not file exceptions either to the hearing court's findings of facts or conclusions of law. Because exceptions were filed by Bar Counsel, we determine whether the findings of fact have been proven in accordance with the applicable burdens of proof. See Rules 16–759(b)(2)(B) and 16–757(b).

■ In the present case, the hearing court entered a default order. The court should have treated the averments as established pursuant to Rules 16–754(c) and 2–323(e). Rule 16–754(c) permits the court to treat failure to file a timely

answer as a default, and Rule 2–323(e) permits the court to treat the averments in a pleading as admitted unless denied. Because the averments were not denied, we treat them as admitted.

■ Further, in the exercise of our supervision over attorney disciplinary proceedings, we conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. *See Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763–64 (2002). We review *de novo* the hearing judge's conclusions of law. See Rule 16–759(b)(1); *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

■ The hearing judge concluded that there was no violation of Rule 1.4 because "there is [no] requirement under the [MRPC] that the lawyer keep in touch with the person who paid the fee." We disagree as to the judge's factual findings and conclusion of law as to Rule 1.4. After an unnecessarily protracted evidentiary hearing,[7] it appears that the court

---

7. The transcript of the disciplinary hearing conducted in the Circuit Court for Baltimore County contains eighty-eight pages. The hearing court's findings are reflected in pages 61 through 87. That portion of the transcript was incorporated as the court's Findings of Fact and Conclusions of Law in its Order dated July 15, 2005, and numbered, as "Findings," pages 2 through 28 inclusive.

Initially, the hearing judge disagreed with petitioner's position that the averments contained in the Petition For Disciplinary Action were deemed admitted by operation of Rules 2–613(f) and 2–323(e). The result of the hearing judge's disagreement required petitioner to expend considerable effort to establish a factual basis for the court to act upon and draw its Findings of Fact and Conclusions of Law. Although, the matter proceeded by default, the hearing court did not recognize until late in the proceeding that it could find "that th[e] allegations [of the Petition For Disciplinary Action] having not been joined at issue by way of an answer are to be considered as true for purposes of the court's decision in making Conclusions of Law in this case."

Rule 2–613(f) provides, in pertinent part: "[A] judgment by default ... includes a determination as to liability and all relief sought...."

Rule 2–323 (e) provides, in pertinent part: "[a]verments in a pleading to which a responsive pleading is required ... are admitted unless denied in the responsive pleading or covered by a general denial."

Moreover, for purposes of appellate review, the transcript was unnecessarily difficult to follow because of the hearing court's failure to

eventually adopted the averments contained in the petition for disciplinary action as established facts. The hearing judge, however, did not consider those facts in making his conclusion of law with respect to Rule 1.4. The unchallenged facts, which the hearing court apparently overlooked, are that after execution of the retainer agreement and payment of the fee, Mr. Coleman notified respondent that he (Mr. Coleman) "had been experiencing difficulties getting the respondent's phone number on the prison's institutional phone list and that's why he did not call him personally." Previously, respondent replied to Mr. Coleman about inquires made by Mr. Coleman's mother. In addition, respondent acknowledged, in his letter dated October 16, 2002, that he had received communication from Mrs. Coleman concerning four cases she had researched. That letter was copied to Mr. Coleman's mother, as well as other correspondence. By letter dated August 21, 2002, Mrs. Coleman requested a status report on legal research and legal preparation conducted for her son's case. She raised specific questions to Mr. Lee within her letter and copied the letter to her son. Respondent acknowledged receiving the August 21, 2002, letter and, in his delayed response, promised to follow up with an answer. There is no evidence in the record that as of the date of the hearing in this matter—June 30, 2005— respondent ever communicated a response to the inquires made by Mrs. Coleman on behalf of her son other than his letter dated October 16, 2002.

Certainly, if respondent did not wish to communicate with Mrs. Coleman that was his prerogative. There is no evidence that Mr. Lee ever told Mr. Coleman that he would not communicate with Mrs. Coleman regarding her son's case. In accordance with the MRPC, respondent's obligation is to keep Mr. Coleman reasonably informed about the status of his case

"prepare and file ... a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law." Rule 16–757(c). Although, Rule 16–757(c) permits dictation of oral findings and conclusions, the transcript of those findings was extremely difficult to follow for purposes of appellate review.

and to promptly comply with his reasonable requests for information. Thus, the focus is on what, if anything, Mr. Lee did to carry out this obligation under the circumstances of this case.

Respondent did not meet with his client until almost one year after payment of the fee. He acknowledged receipt of the trial transcripts of Mr. Coleman's criminal case, copied them, and returned the originals to the client. After execution of the retainer agreement and payment of the retainer fee, all communication on the part of Mr. Lee essentially stopped. There were inquiries from Mrs. Coleman on behalf of her son, but the only response from Mr. Lee was a delayed response that was not very meaningful. If Mr. Lee did not intend to communicate with his client through his mother, he could have explained that to the client. Having failed to do so, the course of dealings with Mr. Coleman suggested that Mr. Lee would respond to Mr. Coleman through his mother. Therefore, we sustain the petitioner's exceptions and conclude that violation of Rule 1.4 was proven by clear and convincing evidence.

With respect to the Rule 1.3 violation, neither the petitioner nor the respondent has taken exceptions to the hearing court's findings of fact and conclusions of law. As to the appropriate sanction petitioner recommends a reprimand, while respondent recommends that we dismiss the disciplinary proceedings. We agree with petitioner that a reprimand is the appropriate sanction. All that is required of respondent is that he act with reasonable diligence and promptness in representing his client. Under the circumstances of this case, respondent's representation of his client was unreasonable in that for almost one year respondent neglected his client's legal matter. The hearing judge found no mitigating factors and, likewise, we find no mitigating factors. *See Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 585, 745 A.2d 1045, 1054 (2000) (holding that a public reprimand would "serve the purpose of protecting the public just as well as a short suspension"). Consistent with our view that Mr. Lee's violation of Rule 1.4 warrants a public reprimand, we conclude that

his violation of Rule 1.3 also warrants a public reprimand.[8] Our goal is not to punish the respondent, but to impose a sanction that will deter other attorneys from engaging in similar misconduct. *See Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 96, 753 A.2d 17, 38 (2000) (citing *Attorney Grievance Comm'n v. Ober*, 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998) (citations omitted)). In this case, a reprimand will serve the purpose of protecting the public. It serves as notice to the respondent and other attorneys that this Court considers an attorney's lack of diligence and lack of communication with his or her client, serious matters.

Because the fee paid to Mr. Coleman has not been returned and Mr. Lee remains counsel of record, it appears that he intends to continue his representation of Mr. Coleman. This opinion is limited to the allegations of misconduct which predated the petition for disciplinary action filed in this case. If respondent continues his representation in this case and wishes to avoid any further disciplinary action, he is duty bound to follow the MRPC.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT; INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST NORMAN JOSEPH LEE, III.**

---

**8.** Petitioner, apparently, abandoned any other charges because no other exceptions were filed and no argument was presented in support of a Rule 1.16(d) violation. Therefore, we will not address the charge involving allegations that respondent violated Rule 1.16(d).