911 A.2d 440

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Barry E. SWEITZER.

Misc. Docket AG No. 69, Sept. Term, 2005.

Court of Appeals of Maryland.

Nov. 20, 2006.

588

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n), for petitioner.

Dion E. Flores, Jr., Rockville, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a petition for disciplinary or remedial action against Respondent, Barry E. Sweitzer, on December 30, 2005, in which there were two complaints included, one by Bar Counsel, and the other by a client, James L. Sebold. With respect to the Complaint of James L. Sebold, it was alleged that Respondent violated Maryland Rule of Professional Conduct 1.3 (Diligence)[2] by failing to act with reasonable diligence and promptness in recording a deed conveying land to Mr. Sebold, which Respondent prepared, in the Land Records of Garrett County. With respect to the complaint of Bar Counsel, it was alleged that Respondent acted deceitfully when he, under the penalties of perjury, presented a Gift Certification Form that contained a forged signature of his former wife to the Motor Vehicle Administration ("MVA"), misrepresented the nature of the transaction by presenting the Gift Certification Form for a vehicle purchased at auction, and misrepresented that he had his former wife's authority to sign the Gift Certification Form on her behalf, in violation of Rule 8.4(b), (c), and (d) (Misconduct).[3]

---

1. Maryland Rule 16–751(a) provides:

   (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 1.3 provides:

   A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 8.4 provides in relevant part:

   It is professional misconduct for a lawyer to:
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

In accordance with Maryland Rules 16–752(a)[4] and 16–757(c),[5] we referred the petition to Judge Donald E. Beachley of the Circuit Court for Washington County for an evidentiary hearing and to make findings of fact and conclusions of law. Judge Beachley held a hearing on May 9, 2006, and on June 1, 2006, issued Findings of Fact and Conclusions of Law, in which he found by clear and convincing evidence that Respondent had violated Maryland Rules of Professional Conduct 1.3 with respect to Mr. Sebold's complaint and 8.4(c) and (d) with respect to Bar Counsel's complaint:

### Findings of Fact and Conclusions of Law

"The Court finds that, except as otherwise indicated, the following facts have been established by convincing evidence:

"1.   Respondent graduated from West Virginia University Law School and was admitted to the Maryland Bar on December 16, 1999.

"2.   Respondent is currently a member in good standing of the Maryland Bar.

### I.   Findings of Fact Concerning Complaint of Bar Counsel (Re: Transfer of Tahoe/Presentation of Gift Certification Form to MVA)

"3.   Respondent and Cristine Kepple were married on August 17, 1991.   They separated in March, 2001 and were

---

(d) engage in conduct that is prejudicial to the administration of justice. . . .

4.   Maryland Rule 16–752(a) states:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record.   The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

5.   Maryland Rule 16–757(c) states in pertinent part:

The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

divorced by a Judgment of Absolute Divorce dated April 21, 2004.

"4. Pursuant to an Order issued by the Circuit Court for Garrett County, Maryland dated July 14, 2004, certain items of personal property were to be sold at auction. One of the items to be sold at auction was a 1997 Chevrolet Tahoe titled in the joint names of Respondent and Ms. Kepple.

"5. Respondent's father, acting as the agent of the Respondent, purchased the 1997 Chevrolet Tahoe at the public auction on September 23, 2004 for $2,700.00. Respondent had intended to personally bid on the Tahoe, but he was arrested when he arrived for the auction.

"6. Ms. Kepple signed the back of the Maryland Certificate of Title for the Tahoe (Petitioner's Exhibit 5) and delivered it to the auctioneer prior to sale.

"7. Due to her concern that Respondent may attempt to register the Tahoe without transferring title to his sole name, Ms. Kepple wrote to the Motor Vehicle Administration ("MVA") to seek the agency's assistance in ensuring that Respondent transfer title to the vehicle prior to its registration. A copy of Ms. Kepple's letter to the MVA dated September 27, 2004 was admitted as Petitioner's Exhibit 4.

"8. On November 17, 2004, Respondent went to the MVA office in Cumberland for the purpose of transferring title to the Tahoe to his sole name. He was assisted at the MVA by customer service agent Eva Gibbs. Respondent presented Ms. Gibbs with the Maryland Certificate of Title for the Tahoe and corresponding Gift Certification form. The Certificate of Title was properly signed by Respondent and Ms. Kepple.

"9. In accordance with standard procedure, Ms. Gibbs entered the relevant information into the computer and discovered a 'flag' pertaining to this vehicle. The 'flag' denoted 'Investigative Services' on the computer and was apparently generated as a result of Ms. Kepple's letter dated September 27, 2004.

"10.   Uncertain of the significance of the 'flag,' Ms. Gibbs took both documents to consult with her supervisor.   The supervisor directed Ms. Gibbs to retain the Certificate of Title and Gift Certification form and specifically not give the documents to Respondent.

"11.   Ms. Gibbs returned to the customer service counter, at which time she advised Respondent there was a problem with the transaction.   Respondent asked Ms. Gibbs, 'What's the problem?,' to which Ms. Gibbs responded, 'I don't know.'

"12.   Respondent then asked Ms. Gibbs if he could look at the paperwork (Certificate of Title and Gift Certification form).   Ms. Gibbs, contrary to her supervisor's instructions, gave the two documents to Respondent, at which time he tore off the Gift Certification form which had been stapled to the Certificate of Title and left the MVA office.   Respondent did not take the Certificate of Title, which was left on the counter.

"13.   The Gift Certification form presented to Ms. Gibbs was not produced at the hearing.   However, Ms. Gibbs testified that a signature that purported to be Respondent's appeared on the 'Signature of Giver' line and a signature purporting to be Cristine Kepple or Cristine Kepple Sweitzer appeared on the 'Signature of Co–Giver' line.   When questioned by the Court concerning her recollection of the signatures, Ms. Gibbs said she was 'pretty sure' that the signature for Ms. Kepple was not in a representative capacity.

"14.   Respondent testified that he signed his name on the 'Signature of Giver' line and that he signed 'Barry Sweitzer for C.K. Sweitzer' or 'B.E. Sweitzer for C.K. Sweitzer' on the 'Signature of Co–Giver' line.   Respondent testified that he had the authority to sign the Gift Certification form on behalf of his wife based on statements made by Ms. Kepple's divorce attorney.

"15.   As set forth in the Conclusions of Law, *infra,* the Court cannot find by clear and convincing evidence that the Gift Certification form presented by Respondent to Ms.

Gibbs contained a signature purporting to be Ms. Kepple's signature.

"16. Respondent concedes he had no direct, express authority to sign the Gift Certification form on behalf of Ms. Kepple. Ms. Kepple confirmed that she did not authorize Respondent to sign the Gift Certification form on her behalf and she had no intention of making a gift to Respondent.

"17. The divorce proceeding between Respondent and Ms. Kepple was not amicable. According to Respondent, Ms. Kepple would use every possible means to cause him difficulty, including the filing of criminal charges.

"18. Immediately above the 'Signature of Giver' lines on the Gift Certification form is the following statement:

"I/we certify under penalty of perjury that all statements made herein are true and correct to the best of my/our knowledge, information, and belief. I/we further certify that no money or other valuable considerations is involved in this transfer. This transfer is not being made contrary to Maryland Vehicle Laws.

"19. In the absence of a legally effective Gift Certification form, the MVA would charge a 5% tax on the sales price of $2,700.00, or $135.00, and the vehicle would have to be inspected. There is no sales tax or inspection requirement for vehicles transferred pursuant to a validly executed Gift Certification form.

### Conclusions of Law

"Petitioner initially contends that Respondent violated Rules 8.4(b), (c), and (d) by presenting a document with a forged signature to the MVA customer service representative. However, after assessing Ms. Gibbs' testimony on this issue, this Court cannot conclude by clear and convincing evidence that the Gift Certification form presented to Ms. Gibbs contained a signature purporting to be Ms. Kepple's. Hence, the Respondent did not violate Rules 8.4(b), (c), or (d) in this respect.

"However, Respondent violated Rules 8.4(c) and (d) by attempting to transfer title using the Gift Certification form. The Tahoe was purchased at a public auction and therefore was clearly not a gift to Respondent from his former spouse. Although the financial incentive to use to Gift Certification form was minimal, Respondent was nevertheless attempting to avoid paying the 5% sales tax and having the vehicle inspected. The Court finds by clear and convincing evidence that Respondent's presentation of the Gift Certification form was an attempt to deceive the MVA by misrepresenting the true nature of the transfer of the Tahoe. Such action constitutes a violation of Rules 8.4(c) and (d).

"Similarly, the Court finds by clear and convincing evidence that Respondent did not have authority to sign the Gift Certification form on behalf of Ms. Kepple. Respondent's testimony that Ms. Kepple's divorce attorney gave him the authority to sign the Gift Certification form is simply not credible. Respondent and Mr. Kepple were involved in a rancorous divorce. It is improbable under these circumstances that Respondent was authorized to sign *any* document on behalf of Ms. Kepple in the Fall of 2004. Ms. Kepple, a member of the Maryland Bar, did not authorize Respondent to treat the transfer of the Tahoe as a gift. Respondent knew that the transfer was not as a result of a gift and the reasonable inference is that he did not attempt to obtain Ms. Kepple's signature or express authority to sign on her behalf because Respondent knew Ms. Kepple would not comply. This conduct, established by clear and convincing evidence, is also a violation of Rules 8.4(c) and (d). *See generally, Attorney Grievance Comm'n v. Childress,* 360 Md. 373, 384, 758 A.2d 117 (2000) (professional misconduct is not limited to conduct within the course of the attorney-client relationship).

## II. Findings of Fact Concerning Complaint of James Sebold

"20. Sometime toward the latter part of 2002, James Sebold requested Respondent to prepare a deed transferring certain real property to Ms. Sebold from his mother.

"21. Respondent obtained a copy of the existing deed, prepared the new deed, and met with Mr. Sebold and his mother. The deed was signed by Mr. Sebold's mother and by Respondent, as the person who prepared the document.

"22. Respondent attached the executed deed to a property intake sheet and presented it to the Garrett County Assessments Office ('Assessments Office') in accordance with his usual practice. Respondent testified that the normal practice was for a deed to be first presented to the Assessments Office, which would then be delivered by the Assessments Office to the Land Records Office across the hall for recordation.

"23. After recordation, Respondent would customarily receive the deed in his mail slot at the Court House. However, at the time of this transaction, Respondent no longer had a mail slot as he was in the process of closing his law practice. He testified that he asked the Clerk in Land Records to mail the recorded deed to Mr. Sebold.

"24. Respondent concedes that he did not follow up to ensure that the deed had been recorded in the Land Records of Garrett County.

"25. The deed was never recorded in the Land Records of Garrett County.

"26. Respondent did not maintain a copy of the deed.

"27. The fee for service related to the Sebold transaction was $100.00 plus $25.00 recording costs.

"28. The sum of $125.00 representing the legal fee and recording cost has been provided to Respondent's counsel to reimburse Mr. Sebold.

### Conclusions of Law

"Respondent violated Rule 1.3 which provides that '[a] lawyer shall act with reasonable diligence and promptness in representing a client.' In transactions involving the transfer of title to real property, the most important legal act is recordation of the deed in the land records of the county where the property is situation. MD.CODE. ANN.,

REAL PROP. § 3–101(a) (2006). Respondent's obligation to Mr. Sebold was to verify that the deed has been recorded in the Land Records for Garrett County, Maryland. *Cf. Attorney Grievance Comm'n v. Cassidy,* 362 Md. 689, 766 A.2d 632 (2001). The evidence is clear and convincing that Respondent failed to act with reasonable diligence in concluding this very simple legal transaction.[6]

## DISCUSSION

The hearing judge found violations of Maryland Rules of Professional Conduct 1.3, and 8.4(c) and (d). Neither Petitioner nor Respondent took exception to the hearing judge's findings of fact or conclusions of law. Therefore, we accept the hearing court's findings of fact, as established, for the purpose of determining the appropriate sanction. Maryland Rule 16–759(b)(2)(A). *Attorney Grievance Comm'n v. Logan,* 390 Md. 313, 319, 888 A.2d 359, 363 (2005). Respondent conceded, and we find, that the hearing court's findings of fact support the conclusions of law. The sole issue we confront is the sanction to be imposed.

## SANCTION

In the case *sub judice,* Respondent was found to have violated Maryland Rules of Professional Conduct 1.3 and 8.4(c) and (d). With respect to the complaint of Mr. Sebold, Respondent violated Maryland Rule of Professional Conduct 1.3, the ethical duty requiring him to act with reasonable diligence and promptness in representing Mr. Sebold, when Respondent failed to conclude what Judge Beachley called a "very simple legal transaction" by verifying that Mr. Sebold's deed had been properly recorded in the Garrett County Land Records

---

**6.** Although there is no direct evidence concerning the method of payment of the recording costs, presumably Respondent would have issued a check from his trust account. In such event Respondent should have noted in due course that the check for recording had not been tendered for payment.

Office. Respondent asserts that a reprimand would be the appropriate sanction for this violation.

■ In a situation such as this, without any additional ethical violations, a sanction such as a public reprimand may be appropriate. *See, e.g., Attorney Grievance Comm'n v. Lee,* 390 Md. 517, 526–27, 890 A.2d 273, 278 (2006) (reprimanding attorney for first offense of failing to act with reasonable diligence and promptness in responding to and meeting with a client). *See also Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 39, 904 A.2d 477, 499–500 (2006) (stating that a reprimand would be too lenient a sanction for multiple rules violations). When imposing sanctions in cases involving more than one complaint and multiple rules violations, however, we consider the infractions together to impose a single sanction based upon the facts and circumstances of the particular case.

With respect to Bar Counsel's complaint, Respondent recommends that we impose a three month suspension for the violations of Maryland Rule of Professional Conduct 8.4(c) and (d). He argues that a three month suspension is appropriate because no client was injured and because the misconduct was an isolated incident. Additionally, Respondent asserts that he has complied with all of Bar Counsel's requests and at the time of the violations, he was an inexperienced attorney suffering emotional distress as a result of his recent divorce.

Petitioner recommends that Respondent be disbarred. Petitioner contends that the most important factors to consider when imposing disciplinary sanctions are the nature of the misconduct and the lawyer's motives. Petitioner argues that Respondent violated Maryland Rule of Professional Conduct 8.4(c) by making two misrepresentations—presenting the Gift Certification Form to the MVA for a vehicle he purchased at auction and misrepresenting that he had his former wife's authority to sign the Gift Certification Form on her behalf—in an effort to avoid payment of a vehicle sales tax and inspection fee.[7]

---

7. Petitioner did not allude to Respondent's violation of Maryland Rule of Professional Conduct 8.4(d) in his Recommendation for Sanction.

In this case we shall impose the sanction of an indefinite suspension, encompassing the Rule 1.3 violation and the Rule 8.4(c) and (d) violations. *E.g. Attorney Grievance Comm'n v. Mininsohn,* 380 Md. 536, 577, 846 A.2d 353, 377 (2004) (imposing single sanction of disbarment for multiple complaints against attorney involving multiple rules violations). *See also Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 420–21, 800 A.2d 747, 757 (2002).

Among the highest duties of this Court is the protection of the legal profession, as we must "uphold the highest standards of professional conduct ... to protect the public from imposition by the unfit or unscrupulous practitioner." *Attorney Grievance Comm'n v. Guberman,* 392 Md. 131, 136, 896 A.2d 337, 340 (2006), quoting *Rheb v. Bar Ass'n of Baltimore City,* 186 Md. 200, 205, 46 A.2d 289, 291 (1946). *See Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 27, 741 A.2d 1143, 1157 (1999) ("Because an attorney's character *must remain beyond reproach* this Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute."), quoting *Attorney Grievance Comm'n v. Deutsch,* 294 Md. 353, 368–69, 450 A.2d 1265, 1273 (1982) (emphasis in original). When imposing sanctions, we have enunciated that, " '[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.' " *Attorney Grievance Comm'n v. Gore,* 380 Md. 455, 472, 845 A.2d 1204, 1213 (2004).

The appropriate sanction for violations of the Maryland Rules of Professional Conduct depends upon the facts and circumstances of each case. *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 480 (1996). Judge Raker, writing for this Court in *Glenn,* has suggested that the American Bar Association Standards for Imposing Lawyer Sanctions ("Standards") provides the appropriate framework

for the determination of a sanction and can be accessed through asking:

(1) What is the nature of the ethical duty violated?

(2) What was the lawyer's mental state?

(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?

(4) Are there any aggravating or mitigating circumstances?

*Id.* at 484, 671 A.2d at 480 (citing American Bar Association Standards for Imposing Lawyer Sanctions, Standard 3.0 at 300 (1987)). *See also* American Bar Association Lawyer's Manual on Professional Conduct 101.3001 (2003) (discussing similar analysis to characterize lawyer misconduct and determine "the presumptive sanction" before considering whether any aggravating or mitigating circumstances are present). We have defined "mitigating factors," pursuant to the Standards, as including

absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Glenn,* 341 Md. at 488–89, 671 A.2d at 483 (citing American Bar Association Standards for Imposing Lawyer Sanctions, Standard 9.31 (1987)).

█ The first two factors included in the Standards, the nature of the ethical duty violated and the lawyer's state of mind, are frequently considered simultaneously. *See Attorney Grievance Comm'n v. Calhoun,* 391 Md. 532, 572, 894 A.2d 518, 542 (2006) ("It is not the finding of effective dishonesty, fraud or misappropriation, however, that is essential to our determination whether disbarment is the appropriate selection, but rather the attorney's intent. 'The gravity of miscon-

duct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct'."), quoting *Attorney Grievance Comm'n v. Culver,* 371 Md. 265, 280–81, 808 A.2d 1251, 1260 (2002), quoting in turn *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000). In the case *sub judice,* Respondent violated Maryland Rules of Professional Conduct 8.4(c) and (d) by attempting to defraud the State of Maryland by avoiding the payment of the vehicle sales tax. As Judge Beachley found, Respondent submitted the Gift Certification Form to the MVA under the penalties of perjury "attempting to avoid paying the 5% sales tax and having the vehicle inspected. . . . Respondent's presentation of the Gift Certification Form was an attempt to deceive the MVA by misrepresenting the true nature of the transfer of the Tahoe." Judge Beachley also found that Respondent knowingly misrepresented his authority to sign the form on behalf of his former wife: "Respondent conceded that he had no direct, express authority to sign the Gift Certification form on behalf of Ms. Kepple. Ms. Kepple confirmed that she did not authorize Respondent to sign the Gift Certification form on her behalf and she had no intention of making a gift to Respondent."

██ Respondent has alleged that because there was no client involved in the Complaint of Bar Counsel, the ethical violation is lessened because the potential loss was to the government, which would have collected no sales tax on the transfer of the automobile. Misconduct that affects the government, however, is equally as abhorrent as misconduct involving clients. As Judge Glenn Harrell aptly stated in *Gore, supra,* " 'We see no significant moral distinction between willfully defrauding and cheating for personal gain a client, an individual, or the government. Cheating one's client and defrauding the government are reprehensible in equal degree'." 380 Md. at 472, 845 A.2d at 1213, quoting *Attorney Grievance Comm'n v. Casalino,* 335 Md. 446, 452, 644 A.2d 43, 45–46 (1994), quoting in turn *Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 550, 318 A.2d 811, 815 (1974).

In many of the cases in which the government has been the victim of a violation of Maryland Rules of Professional Conduct 8.4(c) and (d), we have imposed either an indefinite suspension or a disbarment.

Indefinite suspension has been deemed appropriate when the proof of a violation of Maryland Rules of Professional Conduct 8.4(c) and (d) has fallen short of proof of fraudulent intent. In *Attorney Grievance Commission v. Clark,* 363 Md. 169, 767 A.2d 865 (2001), we indefinitely suspended an attorney for failing to pay employee taxes in violation of Maryland Rules of Professional Conduct 1.15(b), and 8.4(a), (b), (c), and (d) because we noted, significantly, that the attorney had never sought to completely avoid payment of the taxes and there was never a finding that he possessed a fraudulent intent. *Id.* at 184–85, 767 A.2d at 873–74. Moreover, in *Attorney Grievance Commission v. Atkinson,* 357 Md. 646, 745 A.2d 1086 (2000), we indefinitely suspended an attorney for knowingly failing to file federal and state tax returns for eleven years in violation of Maryland Rules of Professional Conduct 8.4(b), (c), and (d), because although the attorney's reason for not paying was not an excuse or mitigating factor, it "perhaps negat[ed] a fraudulent intent." *Id.* at 657, 659, 745 A.2d at 1092–93. *See also Attorney Grievance Comm'n v. Tayback,* 378 Md. 578, 595, 837 A.2d 158, 168 (2003) (indefinitely suspending an attorney for his conviction for willfully failing to file his tax returns for three years in violation of Maryland Rules of Professional Conduct 8.4(b), (c), and (d), without making a finding regarding his intent).

We have ordered disbarment when the findings of fact supporting the violation of Maryland Rules of Professional Conduct 8.4(c) and (d) reflected an intent to defraud the government. In *Casalino, supra,* we considered the appropriate sanction for an attorney who violated Maryland Rules of Professional Conduct 8.4(b), (c), and (d) after he had been convicted of willfully attempting to evade and defeat income tax due for three tax years. To determine the proper sanction, we stated that this Court has "held repeatedly that willful tax evasion is a crime infested with fraud, deceit and dishones-

ty, and will result in automatic disbarment absent clear and convincing evidence of a compelling reason to the contrary." *Casalino,* 335 Md. at 452, 644 A.2d at 46. We concluded that the attorney presented no compelling circumstances mitigating his violations, and therefore, ordered the attorney to be disbarred. *Id.* at 452–53, 644 A.2d at 46.

In *Mininsohn, supra,* we disbarred an attorney for violating Maryland Rules of Professional Conduct 8.4(a), (b), (c), and (d), among others, for "misappropriating funds that he had collected on behalf of . . . the Comptroller." 380 Md. at 572, 846 A.2d at 374. Regarding the severity of his misconduct, we explained that Mininsohn's repeated failure to make the required employee withholding tax payments " 'exemplifies respondent's lack of honesty and proclivity for engaging in conduct prejudicial to the administration of justice'." *Id.* at 568, 846 A.2d at 372, quoting *Angst,* 369 Md. at 420, 800 A.2d at 756. *See also Agnew,* 271 Md. at 551, 553, 318 A.2d at 815, 817 (disbarring attorney for filing fraudulent income tax returns, because tax evasion is a crime "infested with fraud, deceit, and dishonesty," and "when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances, . . . disbarment follow[s] as a matter of course").

In *Gore, supra,* we pondered the appropriate sanction for an attorney who plead guilty to willfully failing to file tax returns or pay sales tax for a period exceeding thirty months in connection with a restaurant he owned and operated, amounting to a tax due and owing of over $800,000, thereby violating Maryland Rules of Professional Conduct 8.4(b), (c), and (d). We affirmed the hearing judge's findings that the attorney's actions were willful because the attorney's decision to give the tax authorities checks "that he either knew or should have known would be dishonored by the bank makes this more than a simple failure-to-file case." *Gore,* 380 Md. at 473, 845 A.2d at 1214. We emphasized that, "[w]hile the record does not indicate that [the attorney] filed any fraudulent returns, his decision to issue bad checks reflects the same type of decep-

tive intent found in cases involving willful tax evasion." *Id.* We concluded that disbarment was the appropriate sanction. *Id.* at 474, 845 A.2d at 1215.

In the case *sub judice,* Respondent's conduct constituted an attempt to defraud the State of Maryland and the MVA to avoid payment of the sales tax; Judge Beachley found that Respondent submitted the form under the penalties of perjury "attempting to avoid paying the 5% sales tax and having the vehicle inspected. . . . Respondent's presentation of the Gift Certification Form was an attempt to deceive the MVA by misrepresenting the true nature of the transfer of the Tahoe." Respondent presented the Gift Certification Form to the MVA for a vehicle he purchased at auction, knowingly misrepresenting both the nature of the transaction and his authority to sign the form on behalf of his former wife. Judge Beachley also determined that "Respondent knew that the transfer was not as a result of a gift and the reasonable inference is that he did not attempt to obtain Ms. Kepple's signature or express authority to sign on her behalf because Respondent knew Ms. Kepple would not comply."

Regardless of the relatively modest nature of the financial benefit that Respondent could have gained, his conduct, intentionally deceitful and motivated by pecuniary interest, was egregious. We require honesty and integrity from attorneys, as we remarked in *Attorney Grievance Commission v. White,* 354 Md. 346, 731 A.2d 447 (1999), because a lawyer's acts in denigration of those values reduces public confidence:

> [A] lawyer's act of dishonesty, fraud, or deceit might cause the public to lose confidence in other lawyers and the judicial system as a whole. . . . [C]andor by a lawyer, in any capacity, is one of the most important character traits of a member of the Bar. . . . The very integrity of the judicial system demands that the attorneys who practice in this state, who represent clients in the courts, and who interact in judicial matters with the courts do so with absolute honesty and personal integrity.

*Id.* at 364, 367, 731 A.2d at 457, 459. Similarly, we explicated in *Attorney Grievance Commission v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001):

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such as a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

*Id.* at 418, 773 A.2d at 488. *See Attorney Grievance Comm'n v. Pennington,* 387 Md. 565, 596–97, 876 A.2d 642, 660 (2005) (referring to the "unparalleled importance of honesty in the practice of law"), quoting *Angst,* 369 Md. at 420, 800 A.2d at 757; *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 304, 818 A.2d 219, 237 (2003) ("Honesty is of paramount importance in the practice of law."). Given Judge Beachley's findings in the present case, a three month suspension, as Respondent recommends, would not be appropriate because it would not be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Gore,* 380 Md. at 472, 845 A.2d at 1213.

With respect to the third factor delineated by the American Bar Association Standards for Imposing Lawyer Sanctions, the amount of actual or potential injury is a factor to consider, but does not provide a defense to an ethical violation. *Glenn,* 341 Md. at 488, 671 A.2d at 483. Here, the Respondent withdrew the Gift Certification Form prior to it becoming the basis for a loss by the State of the transfer tax moneys, but he did, nevertheless, interact with employees at the MVA while he was cloaked in his deception. *See Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 464–65, 374 A.2d 354, 361 (1977) ("An attorney's willful failure to file income tax returns may serious impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is a vital consideration in the imposition of disciplinary sanctions. The lawyer, after all, is intimately associated with administration of the law and should rightfully expected to set an example in observing the law. By willfully failing

to file his tax returns, a lawyer appears to the public to be placing himself above [the] law."). Therefore, his attempt to defraud the State of what was a relatively modest amount must be balanced against the injury to the public.

The final factor recommended by the American Bar Association Standards for Imposing Lawyer Sanctions, whether there are any mitigating or aggravating circumstances, has been seized upon by Respondent as he posits that the ethical violations were not part of a pattern of misconduct; that he does not have a prior disciplinary record; that he fully cooperated with the discipline process; that he was an inexperienced attorney; and that he was suffering emotional distress from a recent divorce. We note that these factors were not the subject of any findings by the hearing judge and Respondent did not except to the findings. *See* Maryland Rule 16-757(b) ("A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."); *Attorney Grievance Comm'n v. Lee*, 393 Md. 546, 566–67, 903 A.2d 895, 907–08 (2006) ("The hearing judge made no findings as to whether Respondent established by a preponderance of the evidence any mitigating factors. . . . We acknowledge that Respondent may have faced health issues at certain times, but observe that Respondent has not established by a preponderance of the evidence his medical condition as a mitigating factor for his misconduct throughout the period of time in question. . . . Respondent also failed to present any mitigating factors to this Court during oral argument.").

Nevertheless, we recognize that Respondent does not have a disciplinary record and his instant violations are not the result of a pattern of misconduct; the two violations occurred two years apart. In *Mininsohn, supra,* we noted: "Mininsohn's conduct . . . demonstrates an extensive pattern of indifference, that . . . 'exemplifies . . . [a] lack of honesty and proclivity for engaging in conduct prejudicial to the administration of justice'. . . [such that] a pattern of misconduct also may serve as an aggravating factor," and determined that disbarment was the appropriate sanction. *Id.* at 573, 846 A.2d at 375, quoting

*Angst*, 369 Md. at 419, 800 A.2d at 756 (remarking that the Comptroller also had to file a cumulative lien against the attorney, "evidencing a pattern of delinquency") (internal citations omitted). *See also* American Bar Association Standards for Imposing Lawyer Sanctions, Standard 9.22 at 49 (1991) (delineating "a pattern of misconduct" as an aggravating factor). Here, an indefinite suspension is a more appropriate sanction to impose because Respondent has no other disciplinary record and his violations were not a pattern of misconduct.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.*

HARRELL and GREENE, JJ., Dissent.

Dissenting Opinion by HARRELL, J., which GREENE, J., joins.

I do not quarrel with the Majority's starting (and ending) point that an indefinite suspension is appropriate here. My departure from that conclusion is that I would qualify it with a right to reapply no sooner than ninety days.

I agree that Sweitzer's intent in the matter of the complaint of Bar Counsel is indistinguishable from that of the cases mentioned in the Majority opinion at slip op. 14–18. Yet, where each attorney in those cases received significant monetary gain or benefit from his or her consummated misconduct, Sweitzer's conduct not only fell short of his actually receiving a monetary benefit from his misguided efforts, i.e., his was an unconsummated attempt withdrawn at the last moment by his own hand, the potential gain from the attempt was exceedingly modest ($135) compared to the facts of the open-ended indefinite suspension cases discussed by the Majority.

One may dispute whether an open-ended indefinite suspension is a lesser sanction than one qualified with a right to reapply no sooner than a minimum period of time. Under the

former, a respondent may seek and be granted readmission theoretically at any time after the effective date of the suspension. That notwithstanding, I am of the view that such an open-ended indefinite suspension can, in practice, be more onerous than a minimum "sit-out" time indefinite suspension because at least the latter offers some clue to a respondent when the Court deems it most likely appropriate to reapply with some hope for success. The open-ended version leaves a respondent usually and completely in the dark as to when it is most propitious to reapply, and fosters potentially multiple frustrating attempts at seeking readmission until the Court, in its infinite wisdom, grants one (if ever). While there certainly are cases that merit that approach, this is not one of them, in my judgment.

Judge Greene authorizes me to state that he joins this dissent.